[No. A090166. First Dist., Div. Four. June 19, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE QUINTANA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A.(2) through II.B.

### COUNSEL

Oliver J. Northup, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Gerald A. Engler and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAY, J.**—Joe Quintana was convicted by a court of foreign object penetration of a minor who was under age 14 and more than 10 years younger than he (Pen. Code, § 289, subd. (j)), and was sentenced to the low term of three years in state prison. He argues that the judgment must be reversed because: (1) there was no substantial evidence of vaginal penetration; or (2) he was unlawfully coerced into waiving his right to a jury trial. In the published portion of this opinion we hold that the Penal Code section 289, subdivision (k)(1) definition of "sexual penetration" as "penetration, however slight, of the genital . . . opening[]" refers to penetration of the labia majora, rather than penetration of the vagina. This conclusion and others lead us to affirm the judgment.

### I. BACKGROUND

The incident occurred on November 25, 1998. The victim, five-year-old Jade E., testified at the preliminary hearing that she and appellant were on the couch in his house watching a movie when he touched her with his hand between her legs. She said that he touched her on the outside of her panties and that it hurt when he did so. She said that he kept his fingers still and did not move them. She went right away to her friend Barbara's house next door, and told her mother and her friend Nicole what had happened.

Based on that testimony, and records of a medical examination of Jade the next day which found various physical symptoms consistent with a "molest including blunt force penetration of hymenal tissue," appellant was held to answer on the charge of aggravated sexual assault of a child by forcible penetration with a foreign object. (Pen. Code, §§ 269, subd. (a)(5), 289, subd. (a)(1).)[1]

Appellant filed a section 995 motion arguing that there was insufficient evidence of the force required for the section 269 charge; the motion was denied. Appellant renewed this argument in a writ petition to this court; that petition was also denied.

Appellant thereafter waived his right to a jury trial in exchange for a six-year cap on his state prison sentence if he were convicted. As part of this bargain, appellant also waived his right to cross-examine Jade if the prosecution elected to use her testimony at the preliminary hearing in lieu of calling her as a witness at trial.

Jade's preliminary hearing testimony was admitted into evidence at trial, and the prosecution called two other witnesses: Jade's friend Nicole, and

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

Patricia Ternahan, the physician's assistant who performed Jade's sexual assault examination.

Nicole testified that she and her mother Barbara lived next door to appellant. Jade, Jade's sister, Jade's mother Trenetta, and various members of appellant's family resided with appellant at the time of the incident. Nicole had known Jade for years; they were like sisters.

Trenetta was over at the Nicole's apartment on the night in question. Jade banged on the door of the apartment around 10:00 p.m.; she was crying and looked scared. Jade told Nicole and Trenetta that appellant had licked her ear, put his tongue in her mouth, and put his hand in her pants, "poking her." When Nicole asked Jade where appellant had poked her, Jade pointed to her vagina. When Trenetta wiped Jade's vagina with a piece of tissue, Jade said "it burns."

Ternahan testified that she had performed over 1,000 child sexual assault examinations and had been qualified as an expert in child sexual abuse in over 100 cases. She said that the injuries she observed when she examined Jade were consistent with "blunt force trauma or digital penetration to the hymenal tissue." The injuries included: swelling of the labia majora; irritation of the perihymenal tissue; and a laceration and broken capillaries at the posterior fourchette. The abnormal shape of the border of the hymen was also indicative of a recent injury. Ternahan opined that these injuries could have been inflicted by digital penetration through panties.

Appellant and his daughter-in-law testified for the defense; their testimony is immaterial to the issues on appeal. Appellant's counsel conceded in closing argument that Ternahan's testimony was "convincing to establish that Jade . . . was molested"; he said this was entirely a case of "who done it."

The court found appellant guilty under section 289, subdivision (j) of object penetration without force, as a lesser included offense of the section 269 charge.

## II. Discussion

### A. *Substantial Evidence*

#### (1) *"Sexual Penetration" in Violation of Section 289*

Section 289 provides: "(j) Any person who participates in an act of sexual penetration with another person who is under 14 years of age and who is more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six or eight years. [¶] (k) As used in this

section: [¶] (1) 'Sexual penetration' is the act of causing the penetration, however, slight, of the genital or anal openings of any person or causing another person to so penetrate the defendant's or another person's genital or anal openings for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." Appellant contends that the genital "opening" to which the statute refers is the vagina, and thus that the judgment must be reversed because there was no evidence of vaginal penetration in this case.

Appellant admits that an argument like the one he now advances was rejected in *People v. Karsai* (1982) 131 Cal.App.3d 224 [182 Cal.Rptr. 406].[2] The crime in that case was rape, which by the terms of section 263 is "complete[d]" by "[a]ny sexual penetration, however slight." The defendant argued that he did not commit rape because his penis did not penetrate the victim's vagina. The victim testified that she believed the defendant's penis was inside her body when it was between her labia majora and minora, and at the entrance to her vagina. The court held that "[p]enetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina." (131 Cal.App.3d at p. 232.) This conclusion was consistent with the "universal rule" in other jurisdictions, and the "clear intent" of the statutory reference to penetration, "however slight." (*Id.* at p. 233.) The court noted that the "penetration which is required is sexual penetration and not vaginal penetration." (*Id.* at p. 232.)

Appellant attempts to distinguish *Karsai* on the ground that section 289, unlike the rape statute (§ 263), refers to penetration of an "opening." ██ However, statutes relating to the same subject are to be harmonized if possible. (*People v. Simon* (1995) 9 Cal.4th 493, 514 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *People v. Lamb* (1999) 76 Cal.App.4th 664, 678 [90 Cal.Rptr.2d 565].) ██ The "sexual penetration" element of section 289 can be readily harmonized with the "sexual penetration" element of section 263 by interpreting the words "genital . . . opening[]" in section 263 to refer to penetration of the labia majora in accordance with *Karsai*, rather than penetration of the vagina as appellant posits. Appellant offers no rationale for distinguishing the degree of penetration which constitutes rape from that which constitutes object penetration. On the other hand, there are a host of reasons, ranging from statutory language and case precedent to considerations of anatomy and policy, supporting the conclusion we reach here that the degree of penetration required to commit these crimes is the same.

First, to hold that no "penetration" of an "opening" occurred in this case would ignore the anatomical facts to which the medical examiner testified.

---

[2]*Karsai* was disapproved on another ground in *People v. Jones* (1988) 46 Cal.3d 585, 600, footnote 8 [250 Cal.Rptr. 635, 758 P.2d 1165].

The evidence shows that appellant's finger penetrated at least as far as the victim's hymen. Ternahan explained in describing Jade's examination that the labia majora "are usually quite plum[p] and cover the genital area" of a five-year-old girl, that the hymenal tissues are "not easy to get to," but that medical methods had been developed to painlessly separate the "several layers of material" and "give us a good view of what is hidden." The labia majora were thus an "opening" through which appellant's finger penetrated. The labia majora are part of the female genitalia. (Stedman's Medical Dict. (26th ed. 1995) pp. 1257, 1954 [defining "external female genital organs" and "vulva"]; 3 Schmidt, Attorney's Dict. of Medicine (2000) p. G-59 [defining "genital organs, external"].) Accordingly, the opening through which appellant's finger penetrated was a "genital" opening.

Second, a "genital" opening is not synonymous with a "vaginal" opening as appellant's argument assumes. The vagina is only one part of the female genitalia, which also include inter alia the labia majora, labia minora, and the clitoris. (Stedman's Medical Dict., *supra*, pp. 1257-1258, 1954 [defining "external female genital organs," "internal female genital organs," and "vulva"]; 3 Schmidt, Attorney's Dict. of Medicine, *supra*, pp. G-59 to G-60 [defining "genital organs, external," "genital organs, internal," and "genitalia"].) Thus, "genital" opening does not necessarily mean "vaginal" opening.

Third, section 289 refers to a penetration of a "genital," not a "vaginal," opening, and, fourth, this was not always the case. As amended in 1985, section 289 included three subdivisions, (a), (b), and (c) which referred to penetration of the "genital . . . opening[]." (Stats. 1985, ch. 945, § 1, p. 2986.) In 1986, four new subdivisions, (d), (e), (f) and (g), were added which referred to the "genital . . . opening[]," and three new subdivisions, (h), (i), and (j), were added which referred to the "vaginal . . . opening[]." (Stats. 1986, ch. 1299, § 6, pp. 4598-4599.) In 1988, the references to "vaginal . . . opening[]" were replaced by references to the "genital . . . opening[]," so that all of the subdivisions referred consistently to the "genital . . . opening[]." If, as appellant argues, "genital" opening were synonymous with "vaginal" opening, the 1988 amendment would have been unnecessary. This amendment shows that the Legislature meant "genital," not "vaginal," opening in section 289.

Fifth, in contrast to section 289, a number of other statutes refer to penetration of the "vagina." (E.g., §§ 311.3, subd. (b)(2) [child exploitation statute defining "sexual conduct" to include "[p]enetration of the vagina or rectum by any object"], 311.4 [same], 1203.066 [for probation eligibility after a violation of § 288 or 288.5, "substantial sexual conduct" includes "penetration of the vagina or rectum of either the victim or the offender by

the penis of the other or by any foreign object"], 11166 [reporting statute defining "sexual conduct" to include "[p]enetration of the vagina or rectum by any object"]; Welf. & Ins. Code, § 6600.1 [sexually violent predator statute defining "substantial sexual conduct" to include "penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object"].) These statutes show that the Legislature knows how to say "vagina," when it presumably means vagina.[3]

Sixth, more recent amendments to section 289 also support application of the penetration standard for rape in cases of object penetration. Prior to October 10, 1999, the language at issue in section 289—penetration of a "genital . . . opening[]"—was repeated in multiple subdivisions of section 289. (See Historical and Statutory Notes, 48 West's Ann. Pen. Code (2001 supp.) foll. § 289, pp. 44-46.) To streamline the statute without making a substantive change (Historical and Statutory Notes, 48 West's Ann. Pen. Code, *supra*, foll. § 289, p. 46), the language in question was defined as " 'sexual penetration' " (Pen. Code, § 289, subd. (k)(1)), and references to acts of "sexual penetration" were substituted for the longer, genital-opening formulation that had been repeated throughout the statute (see 48 West's Ann. Pen. Code, *supra*, § 289, pp. 43-44).[4]

Thus, sections 289 and 263 now use the very same words—"sexual penetration"—to characterize the type of penetration that is prohibited. ▇ "The Legislature, of course, is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.] Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction." (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].) ▇ Appellant offers no grounds for rebutting that presumption here. The recent technical amendments to section 289 thus suggest that there has *never* been any difference in the degree of penetration required to violate sections 289 and 263.

Seventh, the term "sexual penetration" has also been added to many of the statutes that cross-reference section 289. (§§ 209, subd. (b)(1) [kidnapping to commit "sexual penetration in violation of Section 289"], 289.6,

---

[3]The Legislature may wish to reconsider the isolated statutory references to vaginal penetration. (See Langston, *No Penetration—and It's Still Rape* (1998) 26 Pepperdine L.Rev. 1 [hereafter Langston; characterizing the vaginal penetration requirement as an archaic male construct that does not fully address the ways in which women may be violated].) This opinion does not address any matter which may arise under any of the provisions that refer to vaginal penetration.

[4]Since these changes did not alter existing law, they can be applied herein even though appellant's crime was committed before the changes took effect.

subd. (d)(4) [prohibited consensual sexual activities in detention facilities include "[s]exual penetration, as defined in subdivision (k) of Section 289"], 667.71, subd. (c)(12) [habitual sex offender is one who has committed multiple specified offenses, including "[k]idnapping in violation of Section 209 with the intent to commit . . . sexual penetration in violation of Section 289"], 667.9, subd. (c)(10) [sentence enhancements for "[s]exual penetration, in violation of subdivision (a) of Section 289" against certain types of victims], 999*l*, subd. (a) [criteria for repeat sexual offender prosecutions of defendants arrested for specified offenses, including "sexual penetration, in violation of Section 289"], 1174.4, subd. (a)(2)(M) [eligibility for alternative sentencing; relevant crimes include "[s]exual penetration in violation of subdivision (a) of Section 289"], 2933.5, subd. (a)(2)(M) [eligibility for sentence credit; relevant crimes include "[s]exual penetration as described in subdivision (a) of Section 289"], 11160, subd. (d)(22) [duty to report injuries from certain conduct, including "[s]exual penetration, in violation of Section 289"], 12022.53, subd. (a)(13) [enhancement for personal use of a firearm in the commission of certain offenses, including "Section 289 (sexual penetration)"]; Welf. & Inst. Code, § 15610.63, subd. (e)(8) ["sexual assault" against elderly persons and dependent adults includes "[s]exual penetration, as defined in Section 289 of the Penal Code"].)[5] It would be anomalous and confusing if all of these references to the words "sexual penetration" in section 289 meant something other than "sexual penetration" in section 263, where those words first appeared.

Eighth, there is a very close relationship between the crimes of rape and object penetration. Section 289 was enacted to put object penetration on par with rape. (See *People v. Harrison, supra,* 48 Cal.3d at pp. 327-328 [before

---

[5]The smorgasbord of statutes referring to section 289 use other formulations. Some continue to cite the "genital . . . openings," rather than the "sexual penetration," language of section 289. (Evid. Code, § 1036.2, subd. (h) [defining "sexual assault" for purposes of sexual assault victim-counselor privilege]; § 666.7, subd. (d) [referring to the § 667.10 sentence enhancement for multiple § 289 violations].) Another statute simply refers to "penetration by foreign object, as described in subdivision (a) of Section 289." (Welf. & Inst. Code, § 602, subd. (b)(2)(E) [criteria for trying minors as adults].) A reporting statute takes a belt and suspenders approach, defining "sexual assault" to include: conduct in violation of section "289 (sexual penetration)"; "[a]ny penetration, however slight, of the vagina or anal opening of one person by the penis of another person"; and "[a]ny intrusion by one person into the genitals or anal opening of another person, including the use of any object for this purpose." (§ 11165.1, subds. (a), (b)(1), (b)(3).) Section 667.7, subdivision (a), listing prior offenses that trigger a sentence enhancement for felonies involving great bodily injury, refers to "penetration of a *vaginal* or anal opening in violation of Section 289." (Italics added.) Among the many statutes that cross-reference section 289, section 667.7 is the only one we have found which suggests that section 289 requires vaginal penetration. For the reasons set forth herein, we find this suggestion untenable and regard section 667.7's reference to vaginal penetration as loose, aberrant language.

§ 289 there had been no crime comparable to rape and sodomy prohibiting penetration of the genitals or anus by an instrument or body part other than the mouth or penis].) The punishment for most forms of object penetration is the same as for rape. (Compare § 264 [three, six, eight years for rape] with § 289, subds. (a), (b); (d), (e), (f), (g), (j) [same]; see also § 264.1 [same punishment for rape and object penetration in concert].) Statutes have referred, and continue to refer, to section 289 object penetration as "rape." (See § 190.2, subd. (a)(17)(K) [special circumstances include murder in connection with "[r]ape by instrument in violation of Section 289"]; see also, e.g., 47A West's Ann. Pen. Code, *supra,* § 209, p. 68 ["sexual penetration in violation of section 289" recently substituted for "rape by instrument in violation of section 289" in § 209, subd. (b)(1)]; 49 West's Ann. Pen. Code, *supra,* § 667.71, p. 67 [same change to § 667.71, subd. (c)(12)].) Cases have referred, and continue to refer, to Section 289 object penetration as "rape." (E.g., *People v. Anzalone* (1999) 19 Cal.4th 1074, 1081 [81 Cal.Rptr.2d 315, 969 P.2d 160]; *People v. Campbell* (2000) 82 Cal.App.4th 71, 74 [97 Cal.Rptr.2d 830]; *People v. Jones* (1997) 58 Cal.App.4th 693, 704 [68 Cal.Rptr.2d 506]; *People v. Steele* (1991) 235 Cal.App.3d 788, 789 [286 Cal.Rptr. 887]; *People v. Meyer* (1988) 197 Cal.App.3d 1307, 1309 [243 Cal.Rptr. 533]; *Planned Parenthood Affiliates v. Van de Kamp* (1986) 181 Cal.App.3d 245, 258 [226 Cal.Rptr. 361]; *People v. Tolbert* (1986) 176 Cal.App.3d 685, 688 [222 Cal.Rptr. 313].) Section 289 object penetration, in sum, *is* a form of rape, and there is no reason to distinguish the degrees of penetration required to commit different forms of this same crime.

Ninth, appellant's argument is inconsistent with the discussion in *People v. Harrison, supra,* 48 Cal.3d 321. The defendant in *Harrison* inserted his finger into the vagina of the victim three times over the course of a single encounter, with each insertion preceded by separate acts of force. The court held that the defendant was properly convicted of three distinct crimes because "a *new and separate* violation of section 289 is 'completed' each time a *new and separate* 'penetration, however slight,' occurs." (*Id.* at p. 329.) Although the opinion did not need to address the precise degree of penetration involved, it otherwise equated the penetration required for a section 289 violation with that required for a violation of section 263.

*Harrison* noted that, like section 263, section 289 had always provided that penetration with a foreign object involved a "penetration, however slight." Unlike section 263, section 289 did not expressly state that the crime was "completed" upon each such penetration. However, the court concluded that the section 263 concept of "complet[ion]" could be read into section 289. (*People v. Harrison, supra,* 48 Cal.3d at p. 329.) It noted that the Legislature had used "materially similar language" in defining the penetrations required for rape and penetration with a foreign object. (*Id.* at p. 328.)

"Since the origin of the rape and sodomy statutes, the courts ha[d] strictly adhered to the statutory principle that a 'penetration,' however slight, 'completes' the crime." (*Id.* at p. 329.) The Legislature was presumed to have been aware of that construction. (*Ibid.*) "Thus, in using identical words to define the analogous act in section 289, the Legislature undoubtedly intended to convey the same meaning." (*Ibid.*) If, as *Harrison* indicates, "penetration, however slight," means the same thing for purposes of the "analogous act[s]" covered by sections 289 and 263, there is no basis for the distinction appellant seeks to draw.

Tenth, from a policy standpoint, section 289 should not be given the narrow construction appellant advocates. *Karsai* reasoned that a broad interpretation of the penetration element was consistent with the Legislature's "clear intent" in prohibiting "penetration *however slight*" in section 263. (*People v. Karsai, supra,* 131 Cal.App.3d at p. 233, italics added.) The same words in section 289 dictate the same interpretation. Our construction will best serve to deter and punish the kind of heinous conduct section 289 was enacted to prevent. (See *People v. Cruz* (1996) 13 Cal.4th 764, 783 [55 Cal.Rptr.2d 117, 919 P.2d 731] [Penal Code ambiguities are to be interpreted so as to implement apparent legislative intent].)

Eleventh, our interpretation of section 289 is consistent with those given to similar statutes in other jurisdictions. (E.g., *People v. Bristol* (1981) 115 Mich.App. 236 [320 N.W.2d 229, 230] [contact with labia minora violated statute referring to " 'intrusion, however slight, . . . into the genital . . . openings' "; vaginal entry not required]; *State v. Hirsch* (1994) 245 Neb. 31 [511 N.W.2d 69, 80] [entry of labia was intrusion into "genital . . . opening[]"; vaginal entry not required]; *State v. Shamp* (Minn.Ct.App. 1988) 422 N.W.2d 520, 526 [contact "between the folds of skin over [the] vagina" was intrusion into " 'genital . . . opening[]' "].)

The evidence here, which included injury to the hymen, established penetration of the labia majora under the *Karsai* standard. The external female genitalia are referred to as the "vulva" and " 'include[e] the labia majora, labia minora, clitoris and vestibule of the vagina.' " (Langston, *supra,* 26 Pepperdine L.Rev. at p. 15, fn. 68; see also *Jett v. Com.* (1998) 27 Va.App. 759 [501 S.E.2d 457, 459].) The labia majora " 'form the external lateral boundaries of the vulva.' " (Langston, *supra,* at p. 15, fn. 68.) The hymen is "located directly at the front of the opening to the vagina" (*State v. Shoop* (1993) 87 Ohio App.3d 462 [622 N.E.2d 665, 669]); the vagina is " 'the passage leading from the external genital orifice to the uterus' " (*Langston, supra,* at p. 15, fn. 68). Accordingly, contact with the hymen as well as the clitoris and the other genitalia inside the exterior of the labia majora constitutes "sexual penetration" within the meaning of section 289.

(2)  *Vaginal Penetration\**

. . . . . . . . . . . . . . . . . . . . . . . .

B.  *Coerced Jury Trial Waiver\**

. . . . . . . . . . . . . . . . . . . . . . . .

### III.  CONCLUSION

The judgment is affirmed.

Sepulveda, Acting P. J., and Chiantelli, J.,† concurred.

A petition for a rehearing was denied July 18, 2001, and appellant's petition for review by the Supreme Court was denied October 10, 2001.

---

\*See footnote, *ante*, page 1362.

†Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.