Filed 3/18/14  P. v. Cornejo CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PEDRO AGUILAR CORNEJO,<br><br>    Defendant and Appellant. | B250148<br><br>(Los Angeles County<br>Super. Ct. No. LA069866) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph Brandolino, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Pedro Aguilar Cornejo was convicted, following a jury trial, of kidnapping to commit rape in violation of Penal Code section 209[1], subdivision (b)(1), forcible rape in violation of section 261, subdivision (a)(2), sexual penetration by a foreign object in violation of section 289, subdivision (a)(1), sodomy by use of force in violation of section 286, subdivision (c)(2), and forcible oral copulation in violation of section 288a, subdivision (c)(2). The jury found true the allegations that appellant personally used a deadly or dangerous weapon in the commission of the crimes within the meaning of section 12022, subdivision (b)(1). For all sexual offenses, the jury found true the one strike allegations that appellant kidnapped the victim within the meaning of section 667.61, subdivisions (b) and (e)(1) (the "one strike" law) and the movement of the victim substantially increased the risk of harm inherent in the underlying offenses within the meaning of subdivisions (a), (d) and (d)(2). The jury also found true the one strike allegations that appellant committed the sex offenses during the commission of first degree burglary with the intent to commit rape within the meaning of section 667.61, subdivisions (a), (d), and (d)(4) and personally used a deadly or dangerous weapon in the commission of the sex offenses within the meaning of sections 667.61, subdivisions (b) and (e)(3), 12022.3, 12022.5 and 12022.53. The trial court sentenced appellant to a total term of 53 years to life in prison.

Appellant appeals from the judgment of conviction, contending there is insufficient evidence to support his conviction for penetration with a foreign object and also contending the true finding on the one strike burglary allegation must be reversed because the sex offenses did not occur during the commission of a burglary. We affirm the judgment of conviction.


Facts

Lorena F. spent Christmas Eve, 2000, at home in her apartment, wrapping presents, watching television, and waiting for a call from her boyfriend telling her that he

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

was ready to be picked up. When the call came shortly after midnight, she unlocked her front door, then turned around to turn off or hang up the phone. Appellant entered the apartment, grabbed her from behind and put her in a chokehold, then put a knife to her throat and told her not to move. Appellant was wearing a home-made ski mask, which he did not remove during the course of his crimes.

Appellant began moving Lorena toward her bedroom. She said that her boyfriend was coming and would be at the apartment very soon. Appellant replied, "Okay. Then that changes everything," and "We have to go." He forced Lorena out of the apartment and made her walk to a nearby vacant lot. During the walk, he repeatedly threatened to kill her.

Once in the vacant lot, appellant began his sexual assaults on Lorena. He forcibly raped her, forcibly sodomized her, forced her to orally copulate him, and sexually penetrated her with his fingers. Throughout the attack, appellant threatened to kill Lorena. Eventually, appellant said, "Well, I've finally decided to let you live." He told her not to get up or move. Lorena remained on the ground even after she heard appellant leave the lot.

Eventually, Lorena got up, found some of her clothing, dressed and went to nearby residences seeking help. A resident of an apartment complex called police for her. Los Angeles Police Sergeant Roy Guthrie responded to the call. He found Lorena curled up in a fetal position, crying. Sergeant Guthrie took Lorena to Northridge Medical Center.

At the medical center, forensic nurse Kathleen Adams conducted a sexual assault examination of Lorena. Nurse Adams asked Lorena a standard list of questions. In response, Lorena stated that her attacker had penetrated her vagina twice with his penis but she did not think his fingers penetrated her vagina. Nurse Adams observed that Lorena was disheveled and injured. She had debris in her hair, her clothing was dirty and torn and she had no shoes. There were numerous scratches on her body. A physical examination revealed debris in the vestibule between the labia and in the anal folds, and numerous lacerations in the same areas, including the most severe anal laceration the

3

nurse had seen in 17 years of such examinations. Nurse Adams took swab samples from Lorena as well.

In 2010, the DNA profile developed from Lorena's vaginal swab samples resulted in a match in the Combined DNA Indexing System (CODIS). The match was to appellant, who was in state prison in Idaho for a 2001 conviction for committing lewd conduct with a female.

Appellant was interviewed by Los Angeles Police Detective Gregory Stone. Appellant stated that from 1999 through Christmas 2000, he had lived with his father in a residence on Riverton in North Hollywood. The residence was next door to the apartment building where Lorena lived. After Christmas, appellant moved to Idaho. Appellant admitted raping a woman who lived on Riverton on Christmas Eve, and also admitted using a knife to force her to walk to the vacant lot where the rapes occurred. He denied that he had ever seen the woman before that night and claimed that it was just a coincidence that he was outside her door carrying a knife and wearing a ski mask when she opened the door.

Appellant introduced no evidence at trial apart from a drawing showing the portion of the swab used in the DNA analysis.


Discussion

1. Sufficiency of the evidence –sexual penetration by a foreign object

Appellant contends there is insufficient evidence of penetration to support his conviction for violating section 289, and further contends that such a conviction violates his federal constitutional right to due process. We do not agree.

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.

[Citation.]  [¶]  The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.]  [I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  We do not reweigh evidence or reevaluate a witness's credibility.  [Citations.]"  (*People v. Nelson* (2011) 51 Cal.4th 198, 210 [internal quotation marks omitted].)

"'Sexual penetration' is the act of causing the penetration, however slight, of the genital or anal opening of any person . .  for the purpose of sexual arousal, gratification or abuse by any foreign object. . . ."  (§ 289, subd. (k)(1).)[2]  "'Penetration of the [victim's] external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina.' [Citation.]"  (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1366.)

Lorena's testimony was more than sufficient evidence to support the verdict.  She testified repeatedly about the penetration.

On direct examination, Lorena was asked:  "When [appellant] was touching your vagina with his hand, did his fingers ever go inside your vagina?'  She replied:  "Yes." Later, she explained:  "It's just like a big mix-up of the way it happened.  You know, I remember what he did to me, but not exactly if it happened in this order."  She confirmed that "him putting his fingers" actually happened.

On cross-examination, appellant's counsel asked Lorena if "in your interview at the Northridge Hospital, you had indicated that he did not penetrate your vagina with his hand?"  Lorena replied:  "He touched me there,  I know he touched me.  He – I mean, I don't know if you call it 'penetrating' but his fingers were there in the area."  Appellant's counsel asked:  "So as you sit here now, he touched you in the vaginal area, but you don't recollect him –"  Lorena interrupted the question and said:  "He put his fingers in me.  He didn't penetrate me hard like he did with his penis, if that's what you're asking, but his

---

[2]     A finger is a foreign object.  (§ 289, subd. (k)(2).)

fingers were in there." Lorena acknowledged that she told the nurse who examined her that she did not think that her attacker touched her with his finger in the vaginal area at all. She explained that she did not remember the penetration at the time.

On redirect, the prosecutor asked Lorena: "So would you say that any part of his finger went inside your actual vaginal canal?" Lorena replied: "Maybe like this part" and indicated the portion of a finger above the first crease. The prosecutor asked: "So you're saying that that portion of the finger went inside the opening of your vagina?" Lorena replied: "Within that area." The prosecutor asked: "So past the outer what would be the folds?" Lorena replied: "Yes." The prosecutor asked: "Do you think it went inside the vaginal - - what would be the hole of the vagina?" Lorena replied: "That's where I'm not sure . . . . But his fingers were in me there." The prosecutor asked: "When you say 'in,' so it was somewhere in between the folds and then where the hole of the vagina is?" Lorena replied: "Yes." Lorena confirmed that she told Sergeant Guthrie, the officer who came to the scene, that she had been penetrated by her attacker's fingers and penis.

Appellant contends that this testimony is too contradictory and vague to show sexual penetration. We do not agree.

Appellant is correct that Lorena's previous statement to the sexual abuse nurse contradicted Lorena's trial testimony. "The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*In re Robert V.* (1982) 132 Cal.App.3d 815, 821.) The jury was not required to accept Lorena's previous statement to the nurse as true, and did not. The jury was free to find Lorena's trial testimony to be the more accurate account of events. We do not reweigh evidence or reevaluate witnesses. (*People v. Nelson, supra,* 51 Cal.4th at p. 210.)

As for vagueness, both Lorena and the attorneys did struggle to describe the precise anatomical extent of the penetration, but Lorena was positive that appellant's fingers went in her. The most detailed description came on re-direct, when Lorena agreed that appellant's fingers went past the outer folds and reached "somewhere in

6

between the fold and where the hole of the vagina is." That is sufficient to support the verdict.

To the extent that appellant contends that this degree of penetration is insufficient, appellant is mistaken. As the nurse explained at trial, female genitalia consists of the labia majora (the outer two folds of the vagina) the labia minor (which contains the vestibule that houses the hymen) and the vagina. In order to enter the vaginal canal, an object would first pass through the labia major, the labia minor, the vestibule and the hymen. This is generally a distance of two inches. Lorena described a penetration that went past the labia majora, or outer folds.

Penetration of the labia majora is penetration of a "genital opening" and thus sexual penetration within the meaning of section 289. (*People v. Quintana, supra*, 89 Cal.App.4th at p. 1367 ["the labia majora were thus an 'opening' through which appellant's finger penetrated" and since the labia majora are part of the female genitalia, "the 'opening' through which appellant's finger penetrated was a genital opening."] .)

Since we have "determine[d] that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the due process clause of the United States Constitution is satisfied [citation] as is the due process clause of article I, section 15 of the California Constitution." (*People v. Osband* (1996) 13 Cal.4th 622, 690.)


2. One strike burglary allegation

The jury found true the allegation that the charged sex offenses took place during the commission of a burglary within the meaning of section 667.61, subdivision (d). Appellant contends this finding must be reversed because the burglary was complete before the sex crimes occurred. We do not agree.

The jury was instructed on the elements of this allegation with CALCRIM No. 3178, which explained that "the People must prove that: [¶] 1. The defendant entered an inhabited building . . . ; [¶] 2. When the defendant entered the inhabited building, . . . he intended to commit rape by force in violation of Penal Code section 261(a)(2); [¶] AND

7

[¶] 3. After the defendant entered the inhabited building, . . . he committed rape by force in violation of Penal Code section 261(a)(2) before he escaped to a place of temporary safety." The instruction further stated: "A person has reached a place of temporary safety if he or she has successfully escaped from the scene of the crime and is no longer being pursued."

Appellant contends the escape rule does not apply to section 667.61 one strike allegations and that in order for the charged sex offenses to occur "during the commission" of a burglary, the sex offenses must take place inside the inhabited building. Appellant is mistaken.

Appellant argues the escape rule is designed to extend liability for the underlying offense, and that for one strike sentencing purposes, the underlying offense is the charged sex offense. Thus, he concludes, the escape rule could not extend liability for burglary, and burglary must be limited in this context to events occurring from the point of entry to the point of exit.

Our colleagues in the Fourth and Sixth District Courts of Appeal have found that burglary, for purposes of the one strike law, includes escape. (*People v. Palmore* (2000) 79 Cal.App.4th 1290, 1295-1296 ["Burglary, for purposes of this special sentencing circumstance in the one strike statute, means the entire course of illegal entry, commission of a felony and escape. . . ."]; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 191.) Both cases involve sex crimes committed during commercial burglaries under section 667.61, subdivision (e)(1), but their reasoning applies equally to residential burglaries. We agree with that reasoning.

As the Court of Appeal explained in *Alvarado*, "[l]ike the felony-murder provisions of section 189 and various enhancement statutes, section 667.61(e)(2) establishes ancillary consequences for committing a burglary. Moreover, all of these statutes share the same legislative purpose: to protect people from acts of force and violence that may accompany a felony, in this case burglary. For these reasons, we find the continuous-transaction test, including the perpetrator's escape, to be the appropriate way to measure the duration of a burglary under section 667.61(e)(2). Clearly, this

8

measure provides the broadest deterrent against the commission of sex crimes against burglary victims. Therefore, we hold that for the purpose of section 667.61(e)(2), 'during the commission of a burglary' refers to that period of time between the burglar's initial entry with the requisite intent and the burglar's escape to a place of temporary safety." (*People v. Alvarado, supra,* 87 Cal.App.4th at p. 191.)

To the extent that appellant contends that the California Supreme Court's recent decision in *People v. Wilkins* (2013) 56 Cal.4th 333 limits the escape rule to felony murder, appellant is mistaken. The California Supreme Court explained in *Wilkins* that although the escape rule originated in felony murder cases, "[t]he escape rule also has been extended to other contexts requiring proof that an act occurred in the commission of a crime—such as inflicting great bodily injury in the course of commission of a crime [citation], kidnapping for purposes of robbery [citation], and use of a firearm in the commission of a robbery [citation]." (*Id.* at p. 341.) We see nothing in *Wilkins* which calls into question the holdings or reasoning of *People v. Palmore, supra,* 79 Cal.App.4th 1290 and *People v. Alvarado, supra,* 87 Cal.App.4th 178.

Further, appellant is mistaken about the scope of a burglary even apart from the escape rule. Section 459 provides that "[e]very person who enters any house . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." There is no express requirement in this section that the felony be committed inside the house. "California decisions have rejected the invitation to read into the burglary statutes a requirement that a defendant enter premises with the intent to commit a crime 'therein.'" (*People v. Guthrie* (1983) 144 Cal.App.3d 832, 845.) Thus, "California cases do not require that a defendant break and enter premises with the intent to commit a crime therein in order to commit burglary. [Citations.]" (*People v. Ortega* (1992) 11 Cal.App.4th 691, 694 [upholding burglary conviction where entry with intent to commit extortion that would be completed elsewhere]; see also *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1246-1248 [burglary may be found when defendant made entry with intent to facilitate subsequent assault, which ultimately occurred elsewhere]; *People v. Griffin* (2001) 90 Cal.App.4th 741, 748-749; see generally *People v. Wright* (1962) 206

9

Cal.App.2d 184 [defendant committed burglary when he entered a tire shop in order to get access to an adjoining open "shed" from which he intended to steal tires; shed was not a structure falling within the burglary statute]; *People v. Nance* (1972) 25 Cal.App.3d 925 [defendant committed burglary when he broke into building to pull a switch to turn on gasoline pumps located outside the building so that defendant could steal gasoline].)

Appellant also argues the purpose of the burglary one strike allegation is to punish more severely those criminals who take advantage of victims who are particularly vulnerable because they are inside a structure rather than out in public, and that this purpose would not be served by punishing those criminals who commit their sex crimes outside a structure. We find the contrary to be true.

As the Court explained in *Alvarado*, "common experience reveals that people usually lower their guard at home, especially when they are eating, reading, watching television, bathing and sleeping. However, at those very times, they are unsuspecting and particularly vulnerable to shock and surprise by an intruder." (*People v. Alvarado, supra*, 87 Cal.App.4th at pp. 186-187.) Once inside, the burglar may continue to take advantage of the victim's vulnerability by taking "additional steps to avoid detection and [disabling] those present." (*Ibid*.) "Thus it is clear that in section 667.61 . . . the Legislature sought to deter by harsher punishment those who burglarize homes and exploit the vulnerability of people inside to commit sex offenses." (*Ibid*.)

Here, appellant clearly exploited the vulnerability of Lorena while inside her home to commit sex crimes. Lorena had spent the evening at home, relaxing and wrapping Christmas presents. Her guard was lowered, and after she unlocked her front door, she turned briefly to turn off her phone. It was at that moment that she was shocked and surprised by appellant entering her apartment armed with a knife. He was able to begin to implement his plan for sexual assault by moving her toward the bedroom. Upon learning of the imminent return of Lorena's boyfriend, appellant grabbed Lorena, rendering her even more vulnerable and forced Lorena to flee with him to another location to avoid detection. This is exactly the harm the one strike law seeks to deter by its increased punishment.

10

While actual commission of the sex offenses here did not take place within a structure, they did occur before appellant reached a place of temporary safety.  We agree with the Court in *Alvarado* that a definition of burglary refers to the "period of time between the burglar's initial entry with the requisite intent and the burglar's escape to a place of temporary safety" is the definition which "provides the broadest deterrent against the commission of sex crimes against burglary victims."  (*People v. Alvarado, supra,* 87 Cal.App.4th at p. 191.)  We adopt that definition.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL RECORDS

MINK, J.[*]

We concur:

TURNER, P.J.

KRIEGLER, J.

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.