Filed 5/24/22  P. v. Ortega-Camacho CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE TRINIDAD ORTEGA-CAMACHO,<br><br>    Defendant and Appellant. | H048249<br>(Santa Cruz County<br>Super. Ct. No. 17CR04370) |

A jury convicted defendant Jose Trinidad Ortega-Camacho of sexually penetrating a minor, committing a lewd act upon a minor, attempting to commit a lewd act upon a minor, and simple battery.  On appeal from a judgment sentencing him to an indeterminate term of 18 years to life in prison, defendant argues that insufficient evidence supports his sexual penetration and attempted lewd act convictions.  He also contends his simple battery conviction (for a lesser included offense) must be reversed because it should have been dismissed on defendant's motion under Penal Code section 1118.1.  The Attorney General notes that a sentencing error resulted in an unauthorized sentence.  Although we find no prejudicial error requiring a new trial, we will reverse the judgment and remand the matter for resentencing to correct the identified sentencing error.

## I.    TRIAL COURT PROCEEDINGS

Defendant was charged by information with two counts of sexual penetration of a minor 10 years of age or younger (Pen. Code, § 288.7, subd. (b); counts 1 and 2), and

three counts of committing a lewd act upon a child under 14 years of age (Pen. Code, § 288, subd. (a); counts 3 through 5). (Unspecified statutory references are to the Penal Code.) All counts involved the same victim, whom we refer to as "minor" in the interest of privacy.

## A. TRIAL EVIDENCE

### 1. Minor's Testimony

Minor was 11 years old at the time of trial in May 2018. Before July 2017, minor used to visit her grandparents at their house in Watsonville several days per week. She would play with her cousins, especially Uriel. Defendant is Uriel's father, and minor's uncle. Minor testified about four incidents involving defendant, all occurring at her grandparents' house: a bathroom incident, a garage incident, and two incidents that occurred on the day of her grandparents' joint birthday party.

### a. Bathroom Incident

Minor testified that on one occasion when she was 10 years old she was playing tag or hide and seek with Uriel. She looked for Uriel in his bedroom and saw defendant. Defendant told her Uriel was in the bathroom. She went into the bathroom and noticed Uriel was not there. Defendant blocked the door, picked her up, and put her on the counter. Defendant tried to pull her shirt off. Defendant told her she was beautiful, and said other things she could not remember. Minor was scared because "you never know what he's going to do." Minor was eventually able to leave the bathroom because Uriel called her name and defendant left the bathroom.

### b. Garage Incident

On another occasion when minor was 10 years old, minor was playing "find the ball" with Uriel near a garage attached to her grandparents' room. Minor found the ball in the garage, and defendant was also there. Defendant "grabbed [minor] around the back" and carried her to a table in the garage. Minor described it as a bear hug. Minor

2

called for Uriel, he came into the garage, and defendant let her go. Minor was scared during the encounter because she thought defendant might do something bad to her.

### c. Birthday Party Incidents

On another occasion when minor was 10 years old, she was in her grandparents' bedroom watching television on the morning of her grandparents' birthday party. Her grandfather and defendant were fixing something outside, and would come into the room occasionally to get materials. Defendant came into the room alone while minor was lying on her stomach on the bed. Minor testified that defendant "got on back of [minor] and he like starting like to, uh, what's it called, put his privates on me." She clarified that she was referring to his penis, and she could feel it on her back. On direct examination minor testified that they were fully clothed, but on cross-examination she did not contradict multiple questions from defense counsel that indicated defendant touched her with "his bare private part." Defendant eventually stood up, told minor that she was beautiful, and said that if she was older she could be his girlfriend. Defendant left the room.

Around 7:00 p.m. that night, minor attended the grandparents' birthday party at their home. She played hide and seek with Uriel in the back yard. Minor was looking for Uriel at some point and defendant told her Uriel was behind the garage. Defendant followed her toward the garage and "pulled me and he started unbuttoning my shirt and he pulled my pants down and he – he put his hand inside my underwear." He pulled her pants down to her ankles, and he touched her with his hand in her "privates," which she clarified meant her vagina. While he was touching her, defendant told her again that she was beautiful and that if she was older she would have been his girlfriend. Minor was able to run away when the voice of defendant's wife distracted him.

Minor was questioned in detail about the extent of defendant's touching. She testified that defendant "put his fingers inside [her] underwear, like touching the front part of the vagina." Using her fingers as a visual aid, the prosecutor asked minor "I'm

3

using my index finger and my middle finger and they're touching each other. [¶] If this is your outside of your vagina, is he touching you so that it's rubbing against it or is he touching so it's pushing against it?" Minor responded, "Rubbing it." The prosecutor asked, "when he's rubbing your vagina or your privates, does he go in between those two pieces of skin," and minor answered "Yes." Minor responded "No" when asked if defendant's fingers went "into the opening of [her] privates." But minor answered affirmatively a second time when asked if defendant's fingers went "between the two pieces of skin," and minor testified that it felt uncomfortable. On cross-examination, defense counsel asked minor what it meant "if I say something is inside your vagina.?" Minor responded, "I guess the finger inside the middle part." Counsel then asked, "did he just touch your vagina, as you say he did in the backyard, [or] did he put his finger inside of you?" Minor responded, "He just touched it." On re-direct, minor agreed with the prosecutor's statement that defendant's finger had gone "between those two pieces of skin" but "not into the hole behind that piece of skin."

Minor reported that final incident to her father immediately after it occurred. The information was shared with other family members. Minor testified that she had not previously disclosed the earlier touching incidents because she was afraid her parents would not believe her. The family reported the incident to the police after minor's mother took her for a medical exam.

### 2. Police Investigation

Minor was interviewed by a detective two days after the birthday party. A recording of the interview was admitted into evidence and played for the jury. The following summary is based on a transcript of the interview that was also admitted into evidence. Minor's descriptions of the bathroom incident and the latter of the two birthday party incidents were generally consistent with her later trial testimony.

Minor described the bathroom incident as the first time defendant acted improperly toward her. Minor was playing hide and seek with Uriel, defendant told her

4

Uriel was in the bathroom, minor went inside the bathroom, and defendant "tried to touch" her and take her shirt off. Uriel walked into the bathroom, and defendant let minor leave. Regarding the incident that occurred in the evening of the birthday party, minor told the detective that she had been playing tag with Uriel around 7:00 p.m. Defendant told her to go to the backyard and he followed her there. Minor testified that defendant then "start[ed] touching me in my privates and tried to get my shirt and my pants off and he did." He touched her with his hand "[u]nder the underwear."

Minor's statements to the detective about the garage incident described more serious misconduct than her trial testimony. She stated in the interview that in addition to the birthday party incident, defendant had touched her privates two other times on the "[i]nside." In one of those other incidents, she was playing "hide the ball" with Uriel and defendant "started to like touch me inside the pants." Minor explained that she was following Uriel out of the garage to go inside the house, but defendant came from behind and stopped her. Defendant touched minor's privates but stopped when minor screamed Uriel's name. The detective asked minor, "so when he ... touched your privates that time, uh, it was on the skin? And then like – it was like – the difference – so there's a difference between like ... ." The transcript of the interview records minor's response as: "It wasn't in the front, not on the outside."

Near the end of the interview, the detective summarized the incidents. Regarding the garage incident, the detective stated: "you said that you think there were two times – other times where he touched your private area. Um, and one time was in the garage, when the – the soccer ball was hidden. Is that true? Okay. Was there – uh, and then one thing that I didn't understand was, when he had touched your privates on the two other times, did he touch the outside of your privates only, or did he touch the inside of your privates those times?" Minor responded, "The second time in the garage, where we put the bicycles, it was inside. And then this time, it was inside too." At trial, minor testified

5

that the part of the interview about defendant pulling her pants down and touching her privates related solely to the birthday party incident and not to the garage incident.

An expert in DNA analysis testified about comparing DNA taken from swabs from the surface of minor's vulva to a sample from defendant. Male DNA was found in the sample from minor. The expert stated the DNA could have been left there as a result of a man touching minor there, though touch does not always transfer DNA. The sample from minor was consistent with defendant's DNA, but was also consistent with "one in 3.2 Hispanics." Another expert testified about conducting a different type of DNA analysis of the Y-chromosomal DNA found on the vulva swab sample. That analysis showed the male DNA from minor's swab was consistent with defendant's DNA as well as with one in every 1,600 Hispanic men. The sample from minor was not consistent with her father's DNA. A sample taken from a swab of minor's vestibule contained male DNA, but not enough to test it.

### 3. Defense Case

The defense called defendant's father, mother, and wife as both fact and character witnesses. They all testified that they had never seen defendant act inappropriately toward minor. The trial court denied defendant's section 1118.1 motion to dismiss count 2 at the close of the defense case.

### B. VERDICTS AND SENTENCING

As indicated on the verdict forms, counts 1 and 3 were based on the birthday party incident; counts 2 and 4 on the garage incident; and count 5 on the bathroom incident. The jury found defendant guilty as charged regarding the birthday party incident and the bathroom incident (counts 1 (§ 288.7, subd. (b)), 3 (§ 288, subd. (a)), and 5 (§ 288, subd. (a))). As to the garage incident, the jury acquitted defendant of the charged offenses, but found him guilty of the lesser included offenses of simple battery (§ 242) and attempted lewd act upon a minor (§§ 664, 288, subd. (a)).

6

Defendant was sentenced to 18 years to life in prison, consisting of an indeterminate 15-years-to-life sentence for sexual penetration (§ 288.7, subd. (b)), one year consecutive for the attempted lewd act conviction (§§ 664, 288, subd. (a), 1170.1), and two years consecutive for the lewd act conviction (§§ 288, subd. (a), 1170.1).

## II.    DISCUSSION

Defendant's appellate arguments are all reviewed under the same standard. "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We presume the "existence of every fact that the trier of fact could reasonably deduce from the evidence" to support the judgment. (*People v. Medina* (2009) 46 Cal.4th 913, 919.) To overturn a conviction based on insufficient evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) And when a "trial court rules on a motion for a judgment of acquittal under section 1118.1, the standard the trial court must apply is the same as what the appellate court applies when reviewing the sufficiency of the evidence supporting conviction." (*People v. Wilson* (2021) 11 Cal.5th 259, 301.)

### A. SUBSTANTIAL EVIDENCE SUPPORTS THE SEXUAL PENETRATION CONVICTION

Defendant challenges the sufficiency of the evidence supporting his conviction for sexual penetration during the birthday party incident (count 1). Defendant was charged with sexually penetrating minor, which prohibits "sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger." (§ 288.7, subd. (b).) Sexual penetration is defined as the "act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any

7

unknown object." (§ 289, subd. (k)(1).) It is settled that the female genital "opening" to which section 289 refers is the labia majora, not the vaginal opening. (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1365–1366 (*Quintana*), citing *People v. Karsai* (1982) 131 Cal.App.3d 224, 232–233 (*Karsai*), disapproved on another ground by *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.)

Minor testified that defendant "put his fingers inside [her] underwear, like touching the front part of the vagina." When the prosecutor showed two fingers to represent the "outside of your vagina," minor stated that defendant's finger went "in between the two pieces of skin." Though minor responded "No" when asked if defendant's fingers went "into the opening of [her] privates," she answered affirmatively when asked again if defendant's fingers went "between the two pieces of skin," and minor testified that it felt uncomfortable. On redirect, minor agreed with the prosecutor's statement that defendant's finger had gone "between those two pieces of skin" but "not into the hole behind that piece of skin." The only reasonable inference is that the "two pieces of skin" referred to minor's labia majora, consistent with the prosecutor using two fingers to demonstrate that body part and the absence of any other reference to two pieces of skin. Based on minor's testimony that defendant's fingers went between her labia majora, substantial evidence supports a finding that defendant caused the "penetration, however slight," (§ 289, subd. (k)(1)) of minor's genital opening.

Defendant contends no evidence proved "that the intrusion had clearly extended beyond the labia majora." The genital opening for purposes of sections 288.7, subdivision (b) is the labia majora (*Quintana*, *supra*, 89 Cal.App.4th at pp. 1365–1366), and minor testified that defendant penetrated the threshold of that opening by putting his fingers between the "two pieces of skin." (See *Karsai*, *supra*, 131 Cal.App.3d at pp. 233 [affirming rape conviction (which uses the same section 289 sexual penetration definition) where victim felt defendant's penis " 'between [her] lips' " without entering her vagina].) Nothing more was necessary to support the sexual penetration conviction.

8

Defendant argues that because "Jane Doe knew what penetration meant, saying appellant 'went between' those two pieces of skin but was only rubbing obviously meant he did not penetrate her." But this argument conflates the distinct acts of genital penetration and vaginal penetration. Although minor consistently testified that defendant never penetrated her *vaginal* opening, that testimony does not discredit minor's consistent testimony that defendant penetrated her *genital* opening.

Defendant cites minor's testimony on cross-examination that defendant "just touched it." Minor's answer about defendant touching "it" came in response to defense counsel asking, "did he just touch your vagina, as you say he did in the backyard, [or] did he put his finger inside of you?" Importantly, the question as phrased did not differentiate between genital penetration and vaginal penetration. It immediately followed counsel asking minor what it meant to her if something was "inside [her] vagina," to which she replied, "I guess the finger inside the middle part," and counsel asking whether that is "different than touching it," to which minor responded, "I guess." The jury could reasonably infer that minor understood counsel to be referring to vaginal penetration when she was then asked whether defendant "just touch[ed] your vagina … [or] did he put his finger inside of you?" Minor's answer that defendant "just touched it" is wholly consistent with her testimony that defendant put his fingers between her labia, penetrating only the genital opening.

Because we conclude substantial evidence supports defendant's conviction for count 1, his argument that the same conviction violated the federal constitution by not proving all elements beyond a reasonable doubt necessarily fails.

## B. DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL WAS PROPERLY DENIED

Defendant argues the trial court erred in denying his section 1118.1 motion for judgment of acquittal of the sexual penetration count related to the garage incident (count 2) at the close of the defense case.

9

The jury heard two versions of the garage incident from minor. Minor's trial testimony was that defendant grabbed her from behind in a bear hug, placed her on a table in the garage, and then let her go when her cousin Uriel came into the garage. That testimony would not support a conviction for sexual penetration.

But the second version of the garage incident the jury heard—via the video recording of minor's statements during the police interview that was admitted into evidence and played for the jury—described more serious misconduct. Minor told the detective that defendant touched her privates during the garage incident. She confirmed that by "privates" she meant the front part of her private area, and circled that area on a diagram. The detective asked minor, "so when he ... touched your privates that time, uh, it was on the skin? And then like – it was like – the difference – so there's a difference between like ... ." The transcript of the interview records minor's response as: "It wasn't in the front, not on the outside." Toward the end of the interview, the detective asked, "did [defendant] touch the outside of your privates only, or did he touch the inside of your privates those times?" Minor told the detective that defendant touched the inside of her privates two times. She stated that in addition to the birthday incident, the "time in the garage, where we put the bicycles, it was inside."

The foregoing evidence is not overwhelming, but it is nonetheless sufficient for a rational jury to convict defendant of sexually penetrating minor during the garage incident. Minor told the detective that defendant touched the inside of her privates. The detective differentiated between the outside of the privates and the inside, and minor confirmed it was the inside. A rational jury could conclude that minor meant that defendant penetrated her genital opening with one or more fingers. That minor's trial testimony alleged less serious misconduct does not negate the evidence of her statements to the detective. (*People v. Wetle* (2019) 43 Cal.App.5th 375, 388 [" ' "The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." ' "].) That the jury ultimately

10

convicted defendant of only lesser included offenses for the garage incident (counts 2 and 4) is irrelevant to whether there was substantial evidence of the crime originally charged in count two; the verdicts demonstrate that the jury carefully considered all evidence.

Defendant focuses solely on minor's trial testimony and her statement to the detective that was transcribed as minor stating the garage incident "wasn't in the front, not on the outside." Defendant contends the statement "in no way supports a violation" of section 288.7. But as we have noted, minor also told the detective that the "time in the garage, where we put the bicycles, it was inside." Because substantial evidence supports the charged count, we find no error in denying defendant's section 1118.1 motion and sending count 2 to the jury.

### C. SUBSTANTIAL EVIDENCE SUPPORTS THE ATTEMPTED LEWD ACT CONVICTION

Defendant argues insufficient evidence supports his conviction for an attempted lewd act during the garage incident (count 4). To prove that defendant attempted to commit a lewd act upon minor, the prosecution had to prove that he formed the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of himself or the child (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1322), and that he took a "direct if possibly ineffectual step toward that goal." (*People v. Memro* (1995) 11 Cal.4th 786, 862 (*Memro*); §§ 288, subd. (a) [punishing any "person who willfully and lewdly commits any lewd or lascivious act ... upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."], 21a ["An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."], 664.)

Minor testified at trial that defendant grabbed her from behind in a bear hug and put her on a table in the garage during the garage incident. He let her go when she called Uriel's name and Uriel came into the garage. Minor also told the detective during the police interview that defendant touched her privates on the "inside" during the garage

11

incident. The conduct minor described to the detective is substantial evidence supporting a completed section 288, subdivision (a) conviction, and thus necessarily satisfies the actus reus of the *attempted* lewd act conviction for which defendant was convicted. Even without considering the police interview, defendant's conduct of lifting up minor in a bear hug and placing her on the table represents a "direct if possibly ineffectual step toward" committing a lewd act. (*Memro*, *supra*, 11 Cal.4th at p. 862.) Placing minor on the table established control over her and would have allowed defendant to easily commit a lewd act had he not been interrupted by his son entering the garage.

Regarding the element of intent, the jury could infer from defendant's conduct during the bathroom and birthday party incidents that he possessed a lewd intent during the garage incident. The jury found defendant guilty of a completed section 288, subdivision (a) offense based on the bathroom incident, during which defendant put minor on the bathroom counter and told her she was beautiful. The jury also convicted defendant of sexual penetration based on the birthday party incident, where defendant told minor she was beautiful and that if she was older she would have been his girlfriend while digitally penetrating her genital opening. And the jury heard evidence on an uncharged incident where minor was able to feel defendant's penis against her back when he got on top of her while she was in bed the morning of the birthday party incident. From that evidence, a rational jury could infer that defendant planned to act on his sexual interest in minor by performing lewd acts on her during the garage incident. (See *Memro*, *supra*, 11 Cal.4th at p. 862 [evidence of Memro's sexual interest in other young children was sufficient to support intent to commit lewd act upon a minor].)

Defendant suggests that the timing of the incidents is relevant to whether defendant had the specific intent to commit a lewd act on minor during the garage incident. He contends that "[g]iven the vagueness of the time frames of any of the incidents other than those taking place on the date of the party, it is impossible to know whether this was the very first incident that occurred, and if so, whether appellant had the

12

requisite intent, or whether it was only after this event that such an intent may have formed." A defendant's intent on any specific occasion will rarely be overt, and often must be established by circumstantial evidence. The jury's task here was to decide whether—based on other incidents in which defendant demonstrated a lewd intent toward minor—defendant also harbored that intent during the garage incident. The bathroom incident was particularly relevant given that there defendant engaged in the same physical action of lifting minor and placing her on the counter. That some incidents may have occurred after the garage incident did not prevent the jury from relying on the later incidents to find the requisite lewd intent during the garage incident, and defendant points to no authority for such a temporal limitation.

Here again, because substantial evidence supports the conviction for count 4, his argument that his conviction for that count violated the federal constitution by not proving all elements beyond a reasonable doubt necessarily fails.

### D. UNAUTHORIZED SENTENCE

The Attorney General notes that the trial court imposed an unauthorized sentence because it used a determinate term that had been stayed under section 654 as the principal term for the determinate sentence. (We invited defendant to address the issue, and he "has no authority to offer to dispute the People's claim.") Section 1170.1, subdivision (a) dictates the structure of determinate sentences when a person is convicted of two or more felonies and consecutive sentences are imposed. The "aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements." (*Ibid.*) The principal term consists of the "greatest term of imprisonment imposed by the court for any of the crimes." (*Ibid.*) The subordinate term for each consecutive offense consists of "one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed."

13

In structuring the determinate portion of defendant's sentence here, the trial court selected count 3 as the principal term. Count 3 was the lewd act conviction related to the birthday party incident, and the sentence for that count was stayed under section 654, as it was based on the same conduct as in count 1. The court then imposed sentences of one-third the middle term for the remaining two counts (counts 4 and 5). Because the sentence for count 3 was stayed, only the consecutive sentences for counts 4 and 5 (three years in total) were added to defendant's indeterminate term, for a total sentence of 18 years to life.

The foregoing sentence was unauthorized. Section 1170.1's plain language makes clear that the principal term must be the greatest term *imposed* by the court. Here, no term was imposed for count 3 because punishment was stayed under section 654. Count 3 therefore could not serve as the principal term for defendant's sentence. We will reverse the judgment and remand the matter for resentencing in compliance with section 1170.1.

## III. DISPOSITION

The judgment is reversed and the matter is remanded for the limited purpose of resentencing defendant consistent with this opinion.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

H048249 - *The People v. Ortega-Camacho*