Filed 4/29/15  P. v. Leon CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059624 |
| v. | (Super.Ct.No. SWF1203422) |
| ISRAEL ESQUIVEL LEON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jerry E. Johnson, Judge. (Retired judge of the Los Angeles Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Richard J. Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant, Israel Esquivel Leon, went to the home of his sporadic girlfriend to find that she had been "fooling around" with another man. When the other man left, defendant drank and became physically abusive, striking his girlfriend repeatedly on the head and body, attempting sex, digitally penetrating her genital opening, and attempting to strangle her, throughout the night. He was charged with forcible rape (Pen. Code, § 261, subd. (a)(2)),[1] rape with a foreign object (§ 289, subd. (a)(1)), aggravated assault (§ 245, subd. (a)(4)), false imprisonment (§ 236), domestic violence (§ 273.5, subd. (a)), and criminal threats (§ 422). A jury acquitted defendant of the rape and criminal threats counts, but convicted him of misdemeanor assault and battery (§§ 240, 242) as lesser offenses included in count 1, and the remaining counts (§§ 289, 236, 273.5, subd. (a)). He was sentenced to an aggregate term of five years, eight months in prison, and appealed.

On appeal, defendant argues: (1) the trial court erred in denying a hearing on his motion to introduce evidence of the victim's prior sexual activity on the day of the crimes pursuant to Evidence Code, sections 780 and 782; (2) the court misinstructed the jury by giving an additional instruction defining the term "genital opening"; and (3) the abstract incorrectly includes a fine not imposed during the oral pronouncement of judgment. We modify the sentence to delete the fine, but otherwise affirm.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

BACKGROUND

Jane Doe met defendant through a mutual friend, and began seeing him in 2011. Defendant and Doe began cohabiting in May 2011, but the relationship was rocky. One problem was the language barrier, since Doe spoke little Spanish, while defendant spoke little English. Using a translation application on a Smartphone aided in communication. They broke up and reconciled a few times, and had arguments arising from defendant's jealousy.

On September 24, 2012, the two had broken up but were working on their relationship. Defendant had just gotten a new job and maintained a residence in Lake Elsinore, but had also moved back in with Doe. That day, Doe had taken defendant to work but was not sure if she was supposed to pick him up after work or if his new employer would drop him off. That night, defendant had called her but she did not receive the call because she was distracted by an unexpected visitor. The visitor was George Lopez, a man Doe had known for 37 years and had dated for approximately two years. Lopez arrived at about 9:00 p.m. Lopez and Doe talked and had a few drinks, which was awkward for Doe because defendant was expected to arrive soon, and because Lopez regretted their breakup. Doe and Lopez had a "relapse," "slipped back into" their two-year dating relationship, and "fooled around a little bit."

After the "intimate aspect" of the activity between Doe and Lopez had ended, defendant came to the patio door at about 9:30 p.m., saying, "Baby, open the door." Doe's bedroom had a door that led to an outdoor patio, as well as a door that led to the interior of the house. Doe, who was wearing nightclothes, told defendant to wait, and

3

then told Lopez that this was not right, asking Lopez to leave. Lopez exited by way of the interior bedroom door, and exited the house, where he spoke with defendant for approximately 30 minutes. Doe changed into other clothes. Then Lopez left.

Defendant then looked for something to drink, but Doe offered to take him home because she knew it would not be good for him to be there. Defendant was obviously upset but very passive; he began drinking tequila and then drank some beer between 10:00 p.m. and 2:00 a.m. In the living room, Doe asked defendant to leave a few times and apologized to him. She was embarrassed because she made a bad choice by not telling Lopez to leave.

After drinking for a while, defendant began venting his feelings. He corralled Doe in her bedroom, shoved her toward the bed, and would not allow her to leave. If she tried to leave to go into the living room, he would push her back. He called her a bitch and slapped her face, hitting her in the eye, causing her to see a white flash. He also used his fists. For hours, defendant struck her on her face, back and legs, and kicked her in the legs. The blows were hard enough to leave marks and to cause her to sustain a concussion. Doe felt she could not leave because her three children were asleep in the house, and the defendant was drunk and angry.

In addition to striking blows, defendant pushed Doe onto the bed, straddled her and squeezed Doe's neck so hard she could not breathe. He attempted to strangle her approximately three times during the night, and also pulled her hair, bit her on the nipple, and pinned down her arms. At a couple of points, Doe tried to call 911 when defendant

4

left the room to get another drink, but she dropped the phone once and defendant grabbed it on another attempt.

At approximately midnight or 12:30 a.m., defendant ripped her clothing off, tearing the buttons off her blouse and ripping her underpants in half. He pulled her to the edge of the bed, pulled his shorts down and inserted his fingers into her vagina, over Doe's protest. Defendant also inserted his penis into her vagina as Doe tried to fight him off. Defendant withdrew after about three minutes, without ejaculating, and for the rest of the night he continued to slap, push, hit, and call her names.

Sometime around 3:00 or 4:00 a.m., Doe had gotten her phone and called 911, but she had dropped the phone while defendant was slapping her, and never spoke to an operator. Police arrived at approximately 6:00 a.m., interviewed her, photographed her injuries, and took her to the hospital for a rape examination. Doe complained of concussion symptoms (nauseous, tired, forgetful, headaches), and had difficulty talking and swallowing due to the strangling.

The Sexual Assault Response Team (SART) nurse performed an examination of Doe, who, in addition to bruises and abrasions, complained of head and neck pain. Doe's injuries included tenderness to many areas of her head, neck (there were multiple bruises on the right and left side of the neck), and body, bruising to her upper arm and wrist area, abrasions in her mouth and cheek, on her fingers and back, bruising on her legs, abrasions on her lower legs, a blackened eye, bruising on her face and upper chest, along with

5

bruising and an abrasion in the upper region of her right breast and on her left breast.[2]

No genital or anal injuries were found, but that was not considered uncommon. Doe's neck and back pain persisted for a few months after the incident.

Defendant was arrested and charged with rape (§ 261, subd. (a)(2), count 1), forcible penetration by a foreign object (§ 289, subd. (a)(1), count 2), assault by force likely to cause great bodily injury (§ 245, subd. (a)(4), count 3), false imprisonment (§ 236, count 4), making criminal threats (§ 422, count 5), and inflicting corporal injury resulting in a traumatic condition on a former spouse (§ 273.5, subd.(a), count 6).

Defendant was tried by a jury. During the trial, defendant testified in his own defense. In large part, his testimony coincided with Doe's. Defendant described coming to the semi-open patio door leading to Doe's bedroom, and seeing another man lying on the bed in the room. He saw Doe in the room, carrying a bottle, and wearing a blue nightgown. Doe closed the door and locked it so he could not enter. Eventually, Doe came out and defendant asked her if that was her new love. Doe went back in the room and Lopez came out through the other door; both Doe and Lopez appeared to be drunk.

After Lopez left, Doe changed into some clothes and defendant went inside the house, to the kitchen, to get a drink. He drank tequila in the kitchen, but Doe tried to take the bottle away from him. Defendant hid the bottle behind him and went to the bedroom, where he lay down on the bed. Doe followed him into the room and got on top of him, trying to take the bottle away from him. Defendant resisted by pushing her away from

_____

[2] Doe denied that Lopez touched her neck, arms, thighs, chest, or back.

6

him, and they struggled for 10 to 20 minutes. At one point, Doe tried to hug or embrace him, but defendant pushed her away and kept drinking.

Defendant left the bedroom and went back to the kitchen; Doe followed him there and continued trying to get the bottle away from him. Doe also tried to seduce him. They went back to the bedroom where Doe again tried to get the bottle away from defendant, and defendant continued to push her away. The struggle went from inside the bedroom, out onto the patio, and back into the bedroom, as defendant attempted to finish the bottle. During the struggle over the bottle, defendant admitted he slapped Doe's face a couple of times.

Doe stumbled into a guitar and bumped into other things as she tried to take the bottle from defendant and as he jumped around the room to avoid her. Eventually, she was successful in taking the bottle, and went into the living room, while defendant remained in the bedroom. Doe placed the bottle down on some furniture, and when defendant got the chance, he took the bottle and went out onto the patio, where Doe followed him. Doe went around to the rear of the house, so defendant went back into the house and finished the bottle. Doe returned with a pit bull, which she put near where defendant was standing, but instead of attacking defendant, the dog licked his face, so she took the dog back outside.

When Doe returned inside, she went into the living room where defendant could see she was drinking champagne. Defendant went out to the kitchen to find some alcohol, but was unsuccessful; so he had some champagne, also. At some point, Doe was sitting on her bed drinking, and defendant went in to talk to her. Doe tried to take the

7

champagne bottle away from him and defendant pushed her toward the bed where he held her down to prevent her from taking the bottle away. Defendant grabbed her from behind the neck as Doe hugged him.

Soon, defendant was on top of Doe on the bed, with his hands around her waist, and they started to get intimate. Doe did not indicate that she did not want to be touched and even assisted the removal of her blouse by raising her arms. Defendant removed his own shirt, as well as Doe's boots, which she assisted by extending her leg. He unbuttoned her jeans and Doe facilitated their removal by raising her waist area. Defendant rubbed her between the legs with his body and penis to get excited, and wanted to make up with her. He thought she liked rough sex, so he ripped off her panties. Then he unzipped his pants and started rubbing his abdomen and penis against her stomach and intimate part, attempting to achieve an erection. He was unsuccessful, so he put his hand down on her private part, and used the tip of his finger to rub her clitoris. Defendant denied penetrating Doe's vagina with either his penis or his finger, and denied threatening her, other than to say that when a previous girlfriend betrayed him, he had wanted to kill her.

Defendant was still upset at finding Doe with another man in the bedroom, which distracted him, so his reaction was to hit her. He pulled himself up, raising Doe in the process because his arm was underneath her. Doe told defendant she hated him, so defendant buttoned his pants and left the room to go outside, taking the champagne bottle. As he drank, defendant could see Doe holding something to her ear, and realized she was talking on the phone. Defendant heard her saying that "This guy is acting

8

crazy." Thinking that Doe had called the other man, defendant grabbed the phone and learned that she had called 911. The two re-entered the bedroom where Doe again tried to take the bottle from him. Defendant pulled her by the blouse, but did not think he had damaged it, and finished the bottle.

As daylight approached, Doe lay down on the bed again, and defendant, feeling the effects of the alcohol, lay down beside her for a while, and then got up to wait for the arrival of whomever Doe had called. The police arrived at approximately 6:00 a.m. on the morning of September 25th.

At approximately 1:00 p.m. on September 25th, defendant was interviewed at the police station with the assistance of a Spanish speaking officer. In discussing the sexual activity of the previous evening, defendant used the term "tener relaciones," but to defendant this referred to preliminary activity to excite himself and Doe. However, the officer indicated defendant twice stated he had penetrated her vagina with his penis. During the interview, defendant also physically demonstrated with his hand how he digitally penetrated her vagina. Nevertheless, when the officer asked defendant if he had sex with Doe, defendant responded, "no."

The jury acquitted defendant of forcible rape (§ 261, subd. (a)(2)), finding him guilty of two lesser offenses of count 1, assault (§ 240) and battery (§ 242). The jury also acquitted defendant of count 5, the criminal threats (§ 422). It convicted defendant of the remaining counts, 2 (§ 289, subd. (a)(1)), 3 (§ 245, subd. (a)(4)), 4 (§ 236), and 6 (§ 273.5, subd. (a)).

9

Defendant was sentenced to the low term of three years on count 2, with a fully consecutive term of two years for count 3, and a consecutive term of one-third the midterm, or eight months, for count 4. The court stayed sentence as to counts 1 and 6. The court orally imposed mandatory fees of $240 each, pursuant to sections 1202.4, and 1202.45, as well as a criminal conviction fee of $40 per conviction, and a security fee in like amount. However, the clerk's minutes and the abstract of judgment reflect that the court also imposed an additional fine of $300 pursuant to section 290.3.

On September 13, 2013, defendant timely appealed.

## DISCUSSION

1.  *The Court Did Not Abuse Its Discretion by Denying a Hearing on Defendant's Motion to Introduce the Victim's Prior Sexual Conduct.*

Defendant argues that the trial court erred by denying a hearing on his motion to introduce the victim's prior sexual conduct on the date of the incident that gave rise to the criminal charges. Defendant points to the declaration submitted by his trial counsel, filed under seal, in which counsel asserted that he wanted to impeach the victim's testimony that defendant caused her physical injuries by showing that she had sexual intercourse with George Lopez prior to defendant's arrival.[3] We disagree.

---

[3] The record on appeal of counsel's declaration was sealed. In addition, both parties filed their briefs under seal, submitting redacted versions to omit any reference to the information disclosed in the sealed declaration. However, Doe testified in open court that she had a relational "relapse" with Lopez, that they "fooled around" and that their conduct had an "intimate aspect." Additionally, the arguments of counsel to the court, relating to the admissibility of the evidence, were not sealed. In reviewing the merits of the appeal, we conclude there is no basis for sealing this opinion, where the matters disclosed in the sealed declaration were made public in open court.

10

Generally, a defendant may not question a witness who claims to be the victim of sexual assault about the victim's prior sexual activity. (Evid. Code, § 1103, subd. (c)(1); *People v. Mestas* (2013) 217 Cal.App.4th 1509, 1513-1514, citing *People v. Woodward* (2004) 116 Cal.App.4th 821, 831.) Evidence Code section 782, however, provides an exception to this general rule if evidence of sexual conduct of the complaining witness is offered to attack his or her credibility. (Evid. Code, § 1103, subd. (c)(4); *People v. Bautista* (2008) 163 Cal.App.4th 762, 781–782.) Evidence Code, section 1103, subdivision (c)(4), permits the admission of prior sexual conduct evidence in rebuttal, if the prosecutor introduces evidence relating to the complaining witness's sexual conduct.

Attacking a witness's credibility refers to discrediting the accuracy of the testimony. (See 3 Witkin, Cal. Evid., Impeachment, § 270, p. 386.) "Rebuttal," as used in Evidence Code, section 1103, refers to evidence that defeats, refutes, or takes away the effect of something. (Black's Law Dictionary, Sixth Ed. (1990, West Pub.).) Here, the victim acknowledged she had "fooled around" with Lopez earlier that night; defeating, disproving, or discrediting that testimony would not aid the defense. Instead, the defense wanted to explore the subject in more depth. It was therefore inadmissible pursuant to Evidence Code section 1103, subdivision (c)(4).

Additionally, the proffered evidence was not relevant for the purpose for which it was offered. The defendant's offer of proof indicated an intent to undermine or impeach her testimony that defendant "was responsible for the multiple injuries on [the victim's] body," and to show that the injuries could have been sustained during consensual sexual intercourse with Lopez. However, there was no evidence adduced at any point in the

11

proceedings that the victim had been physically beaten by anyone except defendant. Evidence that the victim engaged in sexual activity with another partner earlier in the evening would not raise an inference that the physical injuries she sustained were inflicted by another during consensual sex. In this respect, defendant's reliance (both at trial and on appeal) on the reasoning of *People v. Fontana* (2010) 49 Cal.4th 351 (*Fontana*), is misplaced.

In *Fontana,* the rape victim sustained vaginal injuries, which were inflicted within the same day as the rape occurred, but the medical expert testified that it could have happened several hours prior to the incident with the defendant, and that the injuries could have been caused by consensual digital penetration. (*Fontana, supra*, 49 Cal.4th at p. 364.) The defense proffered evidence that the victim had sexual contact with a third person on the day of the alleged attack, to rebut her testimony that the injuries were caused by the defendant.

The California Supreme Court in *Fontana* reasoned, "Taken together, this evidence offered the possibility that the condition of Irene's cervix and mouth could have been explained by her consensual activity with her boyfriend that morning. If credited, this chain of reasoning could have created a reasonable doubt as to defendant's guilt of the sex-related offenses. The trial court should have conducted a hearing to permit defendant to establish the truth of the hearsay reports of Irene's sexual activity that day and the timing of that activity, and to explore the possible connection between that activity and the condition of Irene's mouth and cervix as viewed at the hospital that evening." (*Fontana*, *supra*, 49 Cal. 4th at pp. 366-367.)

Here, we do not deal with vaginal injuries that might be explained by consensual activity with another man. In any event, a person's consensual sexual conduct on one occasion is, without more, irrelevant to prove consent on another. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1249.) Further, the defendant did not present any evidence that the victim consented to concussion, black eyes, swollen lip, strangulation marks, or bruises on her torso, arms or legs, so any consensual sexual activity with another man was wholly irrelevant to the issue of whether the physical injuries she suffered were inflicted by the defendant.

No vaginal injuries were noted in the SART examination, and there was no opinion evidence that the injuries to the victim's mouth were attributable to sexual activity, as opposed to violence. In fact, the victim did not describe any acts of oral sex with either the defendant or Lopez in her testimony, so there was no possible way to link the mouth injuries to any consensual activity. Evidence of the victim's prior sexual conduct was irrelevant to offer another explanation for the victim's. The trial court's ruling was correct.

2.    *The Modification of Judicial Council of California Criminal Jury Instructions, CALCRIM No. 1045 Did Not Violate Defendant's Due Process Rights.*

The prosecution requested that the trial court modify CALCRIM No. 1045 to instruct the jury that "genital opening includes contact with the victim's hymen, clitoris, and other genitalia inside the exterior of the labia majora,"[4] based on defendant's

---

[4] The language of the proposed modification was formulated from language found in *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1366-1371.

13

testimony that his finger never penetrated into the vagina. At trial, defendant objected, arguing that the definition of the term, "penetration," as contained in CALCRIM No. 1045, was adequate. On appeal, defendant argues the added instructional language violated his due process rights by the unnecessary use of confusing terms, unnecessarily embellishing the standard jury instructions by using technical medical terms, and incorrectly equating "contact" with the clitoris with "slight penetration" of the vagina, referring to the Wikipedia explanation for the term "clitoris." We disagree.

The standard of review for a claim of instructional error is de novo. (*People v. Hamilton* (2009) 45 Cal.4th 863, 948, citing *People v. Berryman* (1993) 6 Cal.4th 1048, 1089 [overruled on another point by *People v. Hill* (1998) 17 Cal.4th 823, fn.1.) We determine independently whether a jury instruction correctly states the law. (*People v. McPheeters* (2013) 218 Cal.App.4th 124, 132.) We consider the instructions as a whole as well as the entire record of a trial, including the arguments of counsel. (*Id*., at p. 132, citing *People v. Franco* (2009) 180 Cal.App.4th 713, 719.) Faced with a claim of instructional error, we are obligated to consider whether it was reasonably likely any allegedly erroneous instruction would have led the jury to misapply the law. (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1155, citing *Estelle v. McGuire* (1991) 502 U.S. 62, 72, and fn. 4 [116 L. Ed. 2d 385, 112 S.Ct. 475] (*McGuire*).)

A jury instruction violates due process if it fails to give effect to the requirement that the People must prove every element of an offense. (See *Sandstrom v. Montana* (1979) 442 U.S. 510, 520-521 [61 L. Ed. 2d 39, 99 S.Ct. 2450].) Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due

process violation. (*Middleton v. McNeil* (2004) 541 U.S. 433, 437 [124 S.Ct. 1830, 158 L.Ed. 2d 701].) The question is "'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" (*McGuire, supra,* 502 U.S. at pp. 62, 72, quoting *Cupp v. Naughten* (1973) 414 U.S. 141, 147 [38 L. Ed. 2d 368, 94 S. Ct. 396] (*Cupp*).)

A challenged instruction is not viewed "'in artificial isolation,'" but is considered in the context of the instructions as a whole and the entire record. (*McGuire, supra,* 502 U.S. at p. 72; *Boyde v. California* (1990) 494 U.S. 370, 378 [108 L. Ed. 2d 316, 110 S.Ct. 1190], quoting *Cupp, supra*, 414 U.S. at pp. 146-147.) Additionally, we regard the jurors as intelligent and capable of understanding and correlating all instructions they are given. (*People v. Mills* (1991) 1 Cal.App.4th 898, 918.) We therefore turn to the modification of CALCRIM No. 1045 to determine whether its terms were erroneous, and whether the jury was misled thereby.

The crime of forcible acts of sexual penetration (§ 289) is committed whenever any person commits an act of sexual penetration against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury. A finger is a "foreign object" within the meaning of the statute. (*People v. Keeney* (1994) 24 Cal.App.4th 886, 889, citing *People v. Wilcox* (1986) 177 Cal.App.3d 715, 717.)

"Sexual penetration" refers to the act of causing the penetration, however slight, of the genital or anal opining of any person, or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object. (§ 289, subd. (k)(1).) The penetration

which is required is "sexual penetration and not vaginal penetration." (*People v. Karsai* (1982) 131 Cal.App.3d 224, 232 (rape) (*Karsai*) [disapproved on a different ground in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8]; see also, *People v.Quintana*, *supra*, 89 Cal.App.4th at pp. 1362, 1366 (*Quintana*).)

In *Karsai,* the defendant argued that he should not have been convicted of rape because his penis did not penetrate the victim's vagina. The reviewing court rejected that argument, holding that vaginal penetration was not required. (*Karsai, supra*, 131 Cal.App.3d at p. 232.) Several years later, the reviewing court in *Quintana* applied the same reasoning to an appellate claim of insufficient evidence of penetration by a foreign object, where the defendant claimed there was no evidence of vaginal penetration. (*Quintana*, *supra*, 89 Cal.App.4th at p. 1366.) The reviewing court in *Quintana* explained that a "genital opening" is not synonymous with a "vaginal" opening. (*Ibid.*) To the contrary, the court in *Quintana* observed that the vagina is but one genital opening on the female anatomy, and that female genitalia include the labia majora, labia minora, and the clitoris. (*Id.* at p. 1367.)

*Quintana* points out that the 1985 version of section 289 included three subdivisions relating to penetration of a "genital opening," and other subdivisions relating to penetration of a "vaginal opening," which were amended in 1988 to replace the references to "vaginal" opening so that all the subdivisions referred to "genital" opening. This shows the Legislature was aware there was a difference between a "vaginal" and a "genital" opening, or the amendment would have been unnecessary. (*Quintana, supra,* 89 Cal.App.4th at p. 1367.)

16

CALCRIM No. 1045, as given to the jury, defined "sexual penetration" as "penetration, however slight, of the genital or anal opening of the other person for the purpose of sexual abuse, arousal, or gratification." The trial court modified the instruction to add an explanation of "genital opening," consistent with the definition of that term found in *Quintana*. This was a correct statement of the law. A reasonable juror might not be aware that a "genital opening" is not necessarily a "vaginal opening." As such, an instruction that clarifies or explains the terms, consistent with the legislative intent, is not likely to mislead the jury.

The modification to CALCRIM No. 1045 was not erroneous.

3.     *The Abstract Should Be Modified to Strike the Fine.*

Defendant argues that the abstract of judgment and the minutes of the sentencing hearing improperly include a $300.00 fine not orally imposed upon the defendant. The People agree. We strike the fine.

Section 290.3 states that the court shall impose a $300 fine upon a first conviction of a sex offense listed in section 290, "unless the court determines that the defendant does not have the ability to pay the fine." (§ 290.3, subd. (a).) Thus, consideration of a defendant's ability to pay is a factor to be considered in deciding whether to impose the fine. (*People v. Burnett* (2004) 116 Cal.App.4th 257, 261 (*Burnett*).) The failure to impose a fine pursuant to section 290.3 is not jurisdictional error which would require us to impose the fine. (*People v. Stewart* (2004) 117 Cal.App.4th 907, 911.)

On a silent record, where we must presume that the trial court discharged its duties (Evid. Code, § 664), we presume the trial court determined the defendant does not have

17

the ability to pay.  (*Burnett, supra,* 116 Cal.App.4th at p. 261; see also, *People v. Walz* (2008) 160 Cal.App.4th 1364, 1371.)  Under those circumstances, it was not required to impose the fine.

Although the court did not impose the fine in the oral pronouncement of sentence, the abstract of judgment includes the fine, as do the clerk's minutes of the hearing. Where there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 (*Mitchell*); *People v. Mesa* (1975) 14 Cal.3d 466, 471 (*Mesa*).)  An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize.  (*Mitchell, supra,* 26 Cal.4th at p. 185, citing *Mesa, supra*, 14 Cal.3d at p. 471.)  Where the abstract of judgment omits a fine that a sentencing court has orally imposed, the Attorney General is entitled to seek correction of the abstract on appeal to reflect the judgment of the trial court.  (*Mitchell, supra,* 26 Cal.4th at p. 186.)

The corollary to this principle is that where the abstract includes a fine that the sentencing court omitted, either party may seek correction of the abstract (and the clerk's minutes).  The fine pursuant to section 290.3 must be stricken from both the clerk's minutes and the abstract of judgment.

18

## DISPOSITION

We direct the trial court to amend both the Clerk's minutes and the Abstract of Judgment to strike the $300.00 fine pursuant to section 290.3,[5] described under Item 11, on page two of the abstract. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ            

P. J.

We concur:

McKINSTER         

J.

KING            

J.

---

[5] The abstract of judgment mistakenly refers to section 290.2, in referring to the fine.

19