Filed 2/1/22  P. v. Weldon CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JON WELDON,<br><br>　　　Defendant and Appellant. | A164256<br><br>(Tulare County<br>Super. Ct. No. VCF333681) |

Defendant Jon Weldon appeals a judgment entered upon a jury verdict finding him guilty of multiple sexual offenses against two young girls.[1]  He contends convictions on all nine felony counts must be reversed because his counsel provided constitutionally ineffective assistance, and that the evidence does not support one of two convictions for sexual penetration of a child 10 years of age or younger.  We affirm the judgment as to eight of the nine convictions, but reverse on the second count involving sexual penetration.

### FACTUAL AND PROCEDURAL BACKGROUND

The victims in this case are two sisters, A., who was approximately six to seven years old at the time of the offenses, and P., who was three or four years old.

---

[1] This matter was transferred by California Supreme Court order on December 20, 2021 from the Fifth Appellate District to the First Appellate District.

Defendant's girlfriend, Kayleigh D., babysat A., P., and their older sister from November 2014 until March 2016. The children were in Kayleigh's home for much of the day. Defendant was present much of the time and was sometimes alone with the children when Kayleigh was out of the house or napping.

In approximately March 2016, A. told her mother defendant had told her to "kiss his privates" and that he had touched her, pointing to her vaginal area. The mother called the police.

A child forensic interview specialist interviewed A. on April 4, 2016. A. told the interviewer Jon had "touched [her] private," that he had done so more than one time, and that this happened at the babysitter's house on the living room couch, while Kayleigh was sleeping. She described several different kinds of sexual conduct, including that he put his finger in her vagina and he rubbed her "coochie" so it "kind of hurt[]" but without putting his finger "in the hole."

The interviewer asked A. to tell everything she remembered about the first time Jon touched her. A. said, "he touched me with two fingers," then, "you know the hole in your private? He put one of his fingers down there and it hurted." Asked how many times he put his fingers into the hole of her "private," A. replied, "I don't know." Asked specifically whether he did so once or more than once, she said, "I don't know, I just don't know how much times he did it because I never count."

The interviewer asked A. to tell her what happened when Jon "puts his fingers in the hole like you said." A. replied that Jon just used one finger and that "[i]t hurts bad," because "it's delicate so that it hurts whenever people do that," because "grownups have big hands." The interviewer asked how Jon got his finger in the hole, and A. narrated a response that includes, "he's

always rubbing (unintelligible) like that and then he put, then he takes, then when he's done doing that, he's like go back on the ground, and then he tells me to go back up there, and then he starts putting the finger in the hole." The context for this remark suggests defendant was directing her to move between the floor of the living room and the couch where he was sitting. Her response continues, that after defendant put his finger in the hole "then he starts rubbing it again," and "when he's done rubbing it again, he tells me to go back on the ground."

A. also answered the interviewer's questions about how Jon put his hands down her pants and rubbed her "coochie" without putting his fingers in the hole. The interviewer showed A. a diagram of an unclothed girl, and A. said that Jon rubbed "inside the line" and that it sometimes hurt. She did not know how many times this occurred, saying, "I don't count how many times he does it."

The interviewer asked what Jon was wearing "when he puts his finger in the hole or rubs," and A. said, "Still dressed. But sometimes his shirt is off." The interviewer asked what A. did when it started hurting, and A. replied that she slapped him, saying, "Cuz I'm like this sometimes and then when he does it, and it hurts, and I slap him."

A. also described other lewd acts. She told the interviewer that defendant would lie down behind her, pull down his pants, and touch her back with "his private" as he pulled it up and down. He also touched her about seven times "on the booty," "in the line" on the back, but not inside "the hole." And he made her touch and squeeze his "private."

3

A. testified at trial in January 2019, when she was nine years old. According to A., defendant was the boyfriend of her babysitter, Kayleigh.[2] On the couch in the living room, he "would get us and put us under a blanket." She described one occasion when he touched her with his hands. He put his hands down her pants and touched her below her underwear, moving his hand around. It felt "[k]ind of weird," and it hurt because he "would go like squeeze it." This occurred "[a] couple more" times." Her sisters were on the floor watching television or sleeping when this happened. Defendant would also take her hand and put it down the inside of his pants, then down his boxers, and had her touch him. She thought this happened once.

P., then seven years old, also testified at trial. She remembered Jon watching her when she was younger. When she was in the blanket, he touched her "private" with his hand outside of her clothes.

Testifying in his own defense, defendant denied touching any of the sisters inappropriately.

The jury found defendant guilty of two counts of sexual penetration of A., a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b); counts 1 and 2)[3]; six counts of committing other lewd acts upon A., a child under the age of 14 (§ 288, subd. (a); counts 3 through 8); and one count of committing a lewd act upon P., a child under the age of 14 (§ 288, subd. (a); count 9). The jury found true allegations that defendant had substantial sexual contact

---

[2] At first, A. said she was not sure if "Jon," the person who sexually abused her, was in the courtroom. She then walked around the courtroom; the prosecutor invited her to "[k]eep walking this way," and she identified defendant as Jon. The children's mother testified that defendant looked physically different than he had three years previously; he had lost weight, was wearing glasses, and was dressed more formally than usual.

[3] All undesignated statutory references are to the Penal Code.

with the victims and multiple victim allegations as to counts 3, 4, and 9 (§ 667.61, subd. (j)(2)).  The court sentenced defendant to consecutive terms of 25 years to life for each of counts 3, 4, and 9, consecutive terms of 15 years to life for each of counts 1 and 2, and consecutive determinate terms of eight years for count 5 and two years (one-third the midterm) for each of counts 6, 7, and 8, for a total indeterminate term of 105 years to life and a total determinate term of 14 years.  This timely appeal ensued.

## DISCUSSION

### I.    Ineffective Assistance of Counsel

Defendant contends his trial counsel misunderstood the law regarding whether he could be impeached with his juvenile delinquency record and, as a result, rendered ineffective assistance.

"Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result." (*People v. Dennis* (1998) 17 Cal.4th 468, 540.)  "A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance." (*Id.* at p. 541.)  Tactical errors are generally not reversible. (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1318.)  "If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal." (*People v. Kraft* (2000) 23 Cal.4th 978, 1068-1069 (*Kraft*).)  On review, we defer to the

trial court's factual findings where they are supported by substantial evidence, but we independently assess whether, with the facts so found, defendant was deprived of the effective assistance of counsel. (*People v. Taylor* (1984) 162 Cal.App.3d 720, 724–725.)

If a defendant does not show that the actions of counsel were prejudicial, we may reject the claim without considering whether counsel's performance was deficient. (*People v. Mayfield* (1997) 14 Cal.4th 668, 784 (*Mayfield*), abrogated on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.) Prejudice is established when counsel's performance " 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " (*Mayfield,* at p. 784, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 686.) Prejudice must be proved as a " 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937 (*Williams*).)

During the discussion of motions in limine, the prosecutor told the court, "One other issue, [defense counsel] and I briefly discussed this. Friday afternoon, after we had court that day, about statements that were made in chambers. It sounds like [defense counsel] maybe misspoke when issues came up about what the defendant may testify about, including that he has never done something like this in the past. And based on what we know in this case, given his history, even though the records are under seal, we believe it would be ethically improper to elicit that type of information from the defendant." Defense counsel responded, "My position is I'm going to advise my client on the scope of the testimony and ask questions and hopefully not elicit the answers that are either misleading or would open us up to admission of evidence, rebuttal evidence. So I don't think that's an

issue." When defendant testified at trial, his counsel did not ask him whether he had committed similar acts in the past.

After trial, the court relieved defense counsel at defendant's request and appointed the public defender to represent him. His new counsel filed a motion for new trial asserting, among other grounds, that trial counsel "acquiesced that [defendant] could be impeached based on his sealed juvenile record which is false and greatly affected [defendant's] constitutional right to testify on his own behalf." In opposition, the People explained that "both sides were aware of Defendant's history," and argued that trial counsel would have been suborning perjury had he sought to elicit testimony that defendant had never committed a similar crime before and that advising a client not to perjure himself did not amount to ineffective assistance. In his reply, defendant argued that he could not have been impeached with his sealed juvenile record and that, in any case, the circumstances of defendant's sealed record did not involve similar allegations of child molestation.

On appeal, defendant contends his counsel misunderstood the law affecting the prosecutor's right to impeach him with the offenses underlying his sealed juvenile records. That is, he argues, the prosecution was not entitled to inquire into the contents of his sealed records, and he was entitled to reply to any such inquiry as if the juvenile court proceedings had never occurred. We have no information about defendant's sealed juvenile records other than the above-quoted discussion.

Two provisions of law allow a minor's juvenile delinquency file to be sealed; one is discretionary, authorizing a minor's records to be sealed upon request by the minor or the probation department (Welf. & Inst. Code, § 781), and the other is mandatory when a juvenile delinquency petition is dismissed due to satisfactory completion of informal supervision or probation (*id.*,

7

§ 786).  (*S.V. v. Superior Court* (2017) 13 Cal.App.5th 1174, 1181 (*S.V.*).)
"When a juvenile court seals a minor's records under a discretionary order,
'the proceedings in the case shall be deemed never to have occurred, and the
person may properly reply accordingly to any inquiry about the events, the
records of which are ordered sealed.'  ([Welf. & Inst. Code,] § 781,
subd. (a)(1)(A).)  Similarly, when a court seals a minor's records under a
mandatory order, 'the *arrest and other proceedings in the case shall be
deemed not to have occurred* and the person who was the subject of the
petition may reply accordingly to an inquiry by employers, educational
institutions, or other person or entities *regarding the arrest and proceedings
in the case.*'  ([Welf. & Inst. Code,] § 786, subd. (b), italics added.)"  (*S.V.*, at
p. 1181, fn. omitted.)  These provisions, defendant urges, would authorize
him to testify that he had never in the past committed an offense similar to
those he was accused of with A. and P., regardless of the truth of his
testimony, without committing perjury or risking impeachment, and his
counsel rendered ineffective assistance in failing to carry out research on this
point, advise him accordingly, and seek an appropriate evidentiary ruling
from the court.

The court in *S.V.* expressed skepticism of an interpretation that would
apply the language of sections 781, subdivision (a)(1)(A) and 786, subdivision
(b) of the Welfare and Institutions Code not only to the juvenile proceedings
themselves but also to the underlying facts that took place prior to an arrest.
(*S.V.*, *supra*, 13 Cal.App.5th at p. 1181, fn. 4.)  We likewise doubt that the
Legislature intended to deem the facts that formed the basis for a juvenile
adjudication—rather than the fact that the juvenile proceedings occurred—
not to have taken place, so as to allow a person to make false statements

about his or her own criminal behavior under penalty of perjury with impunity.

Regardless of the correct resolution of this question, defendant has not met his burden on direct appeal to show either that there could be no reasonable explanation for his counsel's actions or that he suffered prejudice. The only question the record suggests counsel may have avoided asking defendant was whether he had committed a similar act in the past. Even the answer to this question is unclear; in his motion for a new trial defendant argued his juvenile records did not involve similar allegations of child molestation. And the appellate record does not show counsel would have acted differently had he carried out the research defendant suggests. In any case, defendant was able to testify and adamantly deny molesting either of the two victims in this case or their sister, and no one suggested during trial that defendant was a repeat child abuser. There is no reason to think the jury would have evaluated defendant's credibility differently if he had categorically denied ever having molested anyone else in the past. Even if we assume defendant's understanding of the law regarding sealed juvenile records is correct, he has shown neither that a reasonably competent counsel would have asked about his earlier behavior or that there is a " 'demonstrable reality' " he would have achieved a better result had counsel done so. (See *Williams*, *supra*, 44 Cal.3d at p. 937.)

In an effort to show prejudice, defendant suggests his counsel's failure to understand and explain to him that his sealed records could not be used against him forced him to testify in fear "that any misstep would lead to impeachment based on his sealed juvenile record," leading to "nervousness and anxiety" that likely affected his demeanor and undermined the jury's perception of his trustworthiness. And in what defendant describes as a close

9

case, one based on his credibility and that of A. and P. without corroborating physical evidence of the crimes, he argues he would have had a better chance of winning the credibility battle if he had been able to testify free of fear of impeachment with his youthful actions. These assertions are all speculative and do not support a conclusion that defense counsel made errors that undermined the reliability of the trial. (See *Mayfield*, *supra*, 14 Cal.4th at p. 784, *Williams*, *supra*, 44 Cal.3d at p. 937.) Defendant has not met his burden to show ineffective assistance of counsel.

## II.    Two Counts of Sexual Penetration

Among defendant's convictions were two for sexual penetration of A. (§ 288.7, subd. (b).) Defendant concedes the evidence supports one of those counts but contends it is insufficient to show he penetrated A. on more than one occasion.

In considering this challenge, "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.) We "presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence" (*Kraft, supra,* 23 Cal.4th at p. 1053), and we reverse only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) The prosecution has the burden to prove the required penetration beyond a reasonable doubt. (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1038.)

Section 288.7, subdivision (b) applies to any adult who engages in sexual penetration as defined in section 289 with a child 10 years of age or

younger. Section 289, in turn, defines sexual penetration to include "the act of causing the penetration, however slight, of the genital or anal opening of any person" with any foreign object for the purpose of sexual arousal, gratification, or abuse. (§ 289, subd. (k).) The standard for penetration of the genital opening does not require penetration of the vagina itself; rather, it can be met through penetration of the labia majora, which " ' "form the external lateral boundaries of the vulva," ' " and contact with the "genitalia inside the exterior of the labia majora constitutes 'sexual penetration' within the meaning of section 289." (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1371 (*Quintana*).)

Our high court has explained that, although a child victim of sexual crimes need not specify precise dates, times, and circumstances, the victim must describe "*the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct . . . . Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping')." (*People v. Jones* (1990) 51 Cal.3d 294, 316.) Additional details, though they may be helpful in assessing credibility, are not necessary to uphold a conviction. (*Ibid.*; accord, *People v. Matute* (2002) 103 Cal.App.4th 1437, 1445-1446.)

Defendant contends that A.'s testimony described only a single act of sexual penetration and that she did not testify about additional acts with enough certainty to constitute substantial evidence to support a second conviction of that crime. Although the issue is close, we agree that count 2 must be reversed.

11

A. unambiguously described defendant penetrating her vagina with his finger. She also unambiguously described defendant rubbing her "coochie" on multiple occasions. However, not surprisingly for a young child, she did not clearly differentiate, in her trial testimony or in her forensic interview, among the different incidents in which these types of conduct occurred. In particular, she was unable to say whether he penetrated her vagina with his finger more than one time. Rather, when asked directly whether defendant put his finger in "the hole" of her "private" once or more than once, A. responded, "I don't know, I just don't know how much times he did it because I never count."

The Attorney General argues that A.'s use of the word "count" here supports an inference that there must have been more than one incident, but this is not a reasonable inference in the specific context here, where A. first answers "I don't know" when asked "how many times has Jon put his fingers in the hole . . ." and then, in response to *"One time or more than one time?"* repeats *"I don't know"* before offering her explanation about not counting. (Italics added.)

We are also unpersuaded by the Attorney General's argument that A.G. described the incident of vaginal penetration in a manner suggesting a routine rather than a singular occurrence. When the interviewer asks, "how are your bodies when he puts his finger in the hole?" A. describes defendant's actions in directing her to move between the couch and the floor in a manner suggesting a discrete incident, with a fair amount of climbing up and down, rather than recurring behavior. The conduct she describes included "rubbing" before and after a single instance of vaginal penetration. Indeed, A. says "he's always rubbing," but she does not say he put his finger in her "hole" more than once. A rational trier of fact could not have found beyond a

reasonable doubt, based on her description of this incident, that such conduct occurred on more than one occasion. In our view, the evidence that defendant penetrated A.'s vagina more than once is not sufficiently certain to support a second conviction for this conduct.

The Attorney General argues count 2 is still nevertheless supported by A.'s description of defendant rubbing her "coochie" inside the line and squeezing her genital area in a manner that caused pain. This evidence, he contends, supports a conclusion that, in addition to putting his fingers in "the hole," defendant penetrated past A.'s labia majora so as to fall within the scope of section 288.7, subdivision (b). (*Quintana, supra*, 89 Cal.App.4th at p. 1371.) The Attorney General also argues that A.'s description of defendant touching her "inside the line" on the back (although, notably, not "inside the hole" in back) indicates defendant penetrated A.'s anal opening. (§ 289, subd. (k).)

Whatever merit these theories of guilt might have in the abstract, a review of the prosecutor's argument shows the People did not rely on them at trial. Rather, in discussing counts 1 and 2, the prosecutor argued only that the fact A. said she did not count how many times defendant put his finger in "the hole" of her "private" meant that there was more than one instance to count. Thus, the People explicitly and exclusively relied on evidence of vaginal penetration to support the two sexual penetration counts—evidence that we have concluded shows only one such act with sufficient certainty to support a conviction. The instances of defendant rubbing A.'s vagina formed the basis for two of the lewd act counts (§ 288, subd. (a)), count 3 being "Hand to Vagina, First Time" and count 4 "Hand to Vagina, Last Time"; and touching her buttocks was the basis for counts 7 and 8, "First Time" and "Last Time." Indeed, in successfully encouraging the trial court to sentence

13

defendant consecutively, the prosecutor argued that counts 1 and 2 were based on different acts than counts 3 and 4. Whether or not the evidence would have supported a finding defendant's actions in touching, rubbing, or squeezing A. short of penetrating her vagina violated section 288.7, subdivision (b), the record does not show the jury here made that determination.

This case thus is subject to the rule that when a jury hears both factually sufficient and factually insufficient grounds for conviction, we affirm *unless* there is "an affirmative indication the jury relied on the invalid ground," after a review of the entire record, including the facts and instructions, the arguments of counsel, and the entire verdict. (*People v. Marks* (2003) 31 Cal.4th 197, 233; *People v. Guiton* (1993) 4 Cal.4th 1116, 1129-1130.) Here, the prosecutor's argument, in conjunction with the separate verdicts for hand-to-vagina and hand-to-buttocks contact, provide an affirmative indication the jury relied for its verdict on count 2 on a theory of penetration unsupported by the evidence. We therefore reverse the judgment as to that count only. Convictions on the other counts and enhancements remain, as do the consecutive sentences for the remaining counts, totaling 14 years plus 90 years to life.

Because we reverse the judgment as to count 2 on this ground, we need not reach defendant's alternate argument that the trial court erred in refusing to instruct the jury as to count 2 with the lesser included offense of attempted sexual penetration.

## DISPOSITION

The judgment is reversed as to count 2 only, with the result that defendant's sentence becomes a determinate term of 14 years plus an indeterminate term of 90 years to life. In all other respects, the judgment is

14

affirmed.  The trial court is directed to prepare an amended abstract of judgment reflecting this result and to forward it to the California Department of Corrections and Rehabilitation.


                                              TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*People v. Weldon* (A164256)