Filed 2/21/24  P. v. Godfrey CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL GODFREY,<br><br>    Defendant and Appellant. | D080003<br><br><br><br>(Super. Ct. No. SCE398405) |

APPEAL from a judgment of the Superior Court of San Diego County, Herbert J. Exarhos, Judge.  Affirmed as modified.

Benjamin B. Kington, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Christopher P. Beesley and Michael J. Patty, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Michael Godfrey of sodomy with a child aged 10 or younger (Penal Code,[1] § 288.7, subd. (a); count 1); sexual penetration of a

---

[1]    Undesignated statutory references are to the Penal Code.

child aged 10 or younger (§ 288.7, subd. (b); counts 3, 4, and 12); and forcible lewd acts upon a child under the age of 14 (§ 288, subd. (b)(1); counts 5, 7, 8, 9, 11, 14). It found true as to counts 7, 8, 11 and 14 allegations that some of the forcible lewd acts involved substantial sexual conduct under section 1203.066, subdivision (a)(8).

The court sentenced Godfrey to 55 years to life in prison plus 30 years as follows: 25 years to life on count 1, consecutive 15 year-to-life terms on counts 4 and 12, and five-year terms each for counts 5, 7, 8, 9, 11, and 14. It imposed but stayed under section 654 an additional 15 year-to-life term on count 3.

Godfrey contends insufficient evidence showed that (1) counts 7, 8, 9, 11 and 14 were accomplished by force, fear or duress; and (2) there was penetration in counts 4 and 12. He further contends, and the People concede, the count 5 sentence must also be stayed under section 654. We accept the People's concession; accordingly, we modify the judgment and as so modified affirm it. We remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

Doe testified that in the summer of 2019, in the weeks before and after she turned nine years old, Godfrey, her father, sexually molested her about once every week when her mother attended appointments outside the home.

Doe described the first incident, and the general pattern of the subsequent ones: Godfrey would send Doe to his and her mother's bedroom, instructing her to take off all of her clothes, including her underwear. She would comply. He would close and lock the bedroom door. He rubbed her vagina with his penis every single time. She would touch "his penis or his private." During "[m]ost of the times," she saw fluid coming out of Godfrey's penis. "A few different times," she told Godfrey she didn't like it. But he did

2

not say anything and "he just kept on doing it." Godfrey told Doe she had a "perfect body."

After the first incident, Godfrey told Doe to keep it a secret. She felt she could not tell anyone about these incidents or else Godfrey would "whoop" her on the bottom, "or do something else." When the prosecutor asked what she referred to by that last comment, Doe replied, "Meaning, it would be a mystery of what he would do, if he would do [*sic*]." The prosecutor pressed, "A good mystery or a bad mystery?" Doe said, "Bad." Doe said she felt a "little" scared of Godfrey.

The prosecutor asked Doe where on her vagina Godfrey would rub his penis. She replied, "the inner part." The prosecutor showed her "an anatomical drawing of a little girl," and based on that, asked, "[W]ould your [vaginal] lips be split open?" Doe responded, "Yes."

Doe described an incident that occurred in the computer room of their home: Godfrey made her sit on a desk. He started rubbing his penis, and then he rubbed her vagina with his penis. Her mother walked in on them, and Doe fell to the floor. She did not tell her mother what was happening. Although her mother noticed Godfrey and Doe's suspicious reactions, she did not pursue the matter directly at that time.

Doe testified that during the last incident, Godfrey ordered her to undress and take a shower with him. He was naked also. He touched her vagina. Afterwards, he told her to get on the bed. Godfrey rubbed his penis on her vagina multiple times. Also, using Vaseline, he inserted his penis in her anus. She tried to get away and push him off, but was unable to do so, as he was heavy. She told him to stop, but he did not reply. Godfrey ejaculated on her body.

3

That day, Doe mentioned to her mother that she and her father had had a "private talk" in her parents' bedroom. Her mother became suspicious because that was the code she and her husband used to refer to their sexual intercourse. Her mother immediately confronted Godfrey about whether he had touched Doe. He denied it.

The next day, Doe's mother called 911, and took Doe to a hospital for a medical examination. She later took Doe for a forensic interview with a professional. Doe testified that when she talked to an investigating sheriff's deputy about the incidents, she did not disclose everything. She added, "Since my dad was in the Navy, I thought that he would harm me." Doe's mother testified Godfrey made the rules in the house, and administered the harsher discipline, like spankings, to the children.

The only defense witness was a forensic DNA analyst, who testified regarding the results of Doe's DNA tests.

## DISCUSSION

### I. *Evidence of Duress*

Godfrey contends that insufficient evidence supports his forcible lewd act convictions in counts 7, 8, 9, 11 and 14, as Doe did not testify that he "used force or threats to commit these acts." He contends that "the evidence disclosed nothing more than a parent-child relationship." He adds, "This case is closest to [*People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*)] where the dynamics inherent in the family relationship meant the defendant had a position of authority, but there was no evidence the defendant affirmatively did or said something the [*sic*] place the victim in fear."

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences in favor of the judgment to determine whether there is reasonable and credible evidence

4

from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Rivera* (2019) 7 Cal.5th 306, 331.) We do not reweigh the evidence or the witnesses' credibility. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We must accept logical inferences that the jury might have drawn from the evidence although we may have concluded otherwise. (*Rivera,* at p. 331.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar,* at p. 60.)

As applicable here, the offense of forcible lewd acts on a child under the age of 14 years requires proof that the perpetrator used "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim." (§ 288, subd. (b)(1).) Duress is objective in nature and not dependent on a victim's response. (*People v. Soto* (2011) 51 Cal.4th 229, 246.) Duress is " " 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' " (*Ibid.,* italics omitted.) Duress is measured by "a purely objective standard." (*Ibid.*)

This court has stated that the essence of duress is psychological coercion. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 15 13-14, overruled in part on other grounds by *People v. Soto, supra,* 51 Cal.4th at p. 248, fn. 12.)

5

We have listed some relevant factors determining the existence of duress including the age of the victim, the relationship to the defendant, relative size and age disparities, location of the molestation, position of dominance and authority of the defendant, and defendant's past exploitation of the victim. (*Cochran,* at p. 15.) "[A]s a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present." (*Id.* at p. 15, fn. 6; quoted in *People v. Veale* (2008) 160 Cal.App.4th 40, 49.)

Here, the evidence and reasonable inferences therefrom established that Godfrey used duress to induce Doe to acquiesce to his sexual acts. As her father, he was in a position of authority over her. He would order her to go the bedroom to get ready, and then he would lock the bedroom door, a clear signal that he did not want to be interrupted or caught, and that he intended that she stay inside. Godfrey was undoubtedly physically larger than Doe based on Doe's testimony he was heavy and she could not push him off of her, and he was the disciplinarian, having "whooped" her bottom in the past. He was in the Navy, and she was concerned he might react in a way that was unpredictable but "bad." Doe admitted she was a little afraid of him. As an eight-year old when the sexual incidents began, she was particularly susceptible to being coerced. (*People v. Cochran, supra,* 103 Cal.App.4th at pp. 15-16; *People v. Veale, supra,* 160 Cal.App.4th at pp. 49-50.) Doe told Godfrey she did not want to have sex with him, but he ignored her. He expressly ordered her not to tell anyone about the incidents. She obeyed that order for several weeks.

What we stated in a previous case applies equally here: "This record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority. Her

6

compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent. Under these circumstances, given the age and size of the victim, [and] her relationship to the defendant, the evidence amply supports a finding of duress. [¶] Since we have found duress, we need not discuss whether force was also present." (*People v. Cochran, supra,* 103 Cal.App.4th at pp. 15-16.)

Godfrey recognizes that on one occasion, after the first incident, he told Doe not to tell anyone about his sexual misconduct. But he claims, "this was not accompanied by any threat; he did not give her any reason why she should not tell." In our review, we focus upon the evidence that was presented, rather than evidence that might have been but was not presented. (*People v. Story* (2009) 45 Cal.4th 1282, 1299.)

Further, Godfrey's reliance on *Espinoza* is unavailing. In that case, the court described the molestations as follows: "Defendant did not grab, restrain or corner [the victim] during the final incident out of which the [ ] section 288, subdivision (b) count and the attempted rape count arose. [The victim] did not cry, and she offered no resistance. Instead, defendant simply lewdly touched and attempted intercourse with a victim who made no oral or physical response to his acts." (*Espinoza, supra,* 95 Cal.App.4th at p. 1320.) The court added that the victim "testified that she moved when defendant tried to place his penis inside her vagina and thereby prevented him from accomplishing this act. There was no evidence defendant responded to her movement in any way other than to discontinue his conduct. Certainly there was no evidence that he attempted to overcome this possible act of resistance." (*Id.* at p. 1320, fn. 8.)

The *Espinoza* court explained its finding of no duress as follows: "The only way that we could say that defendant's lewd act on [the victim] and

7

attempt at intercourse with [her] were accomplished by duress is if the mere fact that he was [her] father and larger than her combined with her fear and limited intellectual level were sufficient to establish that the acts were accomplished by duress.  What is missing here is the ' "direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' [Citation.]  Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat . . . .' [Citation.]  No evidence was adduced that defendant's lewd act and attempt at intercourse were accompanied by any 'direct or implied threat' of any kind.  While it was clear that [the victim] was afraid of defendant, no evidence was introduced to show that this fear was based on anything defendant had done other than to continue to molest her.  It would be circular reasoning to find that her fear of molestation established that the molestation was accomplished by duress based on an implied threat of molestation." (*Espinoza, supra,* 95 Cal.App.4th at p. 1321.)

The *Espinoza* case is distinguishable as the victim there was 12 years old, some years older than Doe, when the abuse began. (*Espinoza, supra,* 95 Cal.App.4th at p. 1321; see *People v. Veale, supra*, 160 Cal.App.4th at p. 49 [distinguishing *Espinoza* because the victim was "considerably older" than the six- or seven-year-old *Veale* victim].)  Moreover, here, in the very first incident, Godfrey ordered Doe not to tell anyone about his sexual molestation; in the context, that could be considered an implied threat.  Further, in some of the incidents, she told him she did not like it, but he did not stop.  If she did not object in other incidents, it is a reasonable inference that she realized

8

doing so would be futile. The facts relating to count 14 particularly show duress. That incident, which involved sodomy, showed Doe physically resisted Godfrey by attempting to get him off of her but she could not. He continued his sexual assault until he ejaculated.

## II. *Evidence of Penetration*

Godfrey contends there was insufficient evidence of penetration to sustain the counts 4 and 12 convictions. He claims Doe testified "he rubbed his penis 'on' her vagina. He did not put it inside her vagina."

Section 288.7, subdivision (b) provides: "Any person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 15 years to life." Section 289 defines "sexual penetration" as "the act of causing the penetration, however slight, of the genital or anal opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object." (§ 289, subd. (k)(1).) The penetration which is required is "sexual penetration and not vaginal penetration." (*People v. Karsai* (1982) 131 Cal.App.3d 224, 232, disapproved on a different ground in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8; see also, *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1366.)

In *Karsai*, the defendant, who was convicted of rape, argued on appeal that his penis did not penetrate the victim's vagina. The reviewing court rejected that argument, holding that vaginal penetration was not required. (*People v. Karsai, supra,* 131 Cal.App.3d at p. 232.) The *Quintana* court applied the same reasoning to an appellate claim of insufficient evidence of penetration by a foreign object, where the defendant claimed there was no evidence of vaginal penetration. (*People v. Quintana, supra,* 89 Cal.App.4th

9

at p. 1366.) It explained that a "genital opening" is not synonymous with a "vaginal" opening. (*Ibid.*) It stated that the vagina is but one genital opening on the female anatomy, and that female genitalia include the labia majora, labia minora, and the clitoris. (*Id.* at p. 1367.)

*Quintana* points out that the 1985 version of section 289 included three subdivisions relating to penetration of a "genital opening," and other subdivisions relating to penetration of a "vaginal opening," which were amended in 1988 to replace the references to "vaginal" opening so that all the subdivisions referred to "genital" opening. This shows the Legislature was aware there was a difference between a "vaginal" and a "genital" opening, or the amendment would have been unnecessary. (*People v. Quintana, supra,* 89 Cal.App.4th at p. 1367.)

Here, the court instructed the jury with CALCRIM No. 1128, which defined "sexual penetration" as "penetration, however slight, of the genital or anal opening of the other by any foreign object, substance, instrument, device, or any unknown object for the purpose of sexual abuse, arousal, or gratification."

At trial, the prosecutor used an anatomical doll to help Doe clarify her testimony that Godfrey touched or rubbed his penis on the inside of her vagina. She agreed he went between her labia which we can infer from her agreeing her lips were "split open." The jury was able to observe that testimony and correlate it to the jury instruction defining "sexual penetration." We conclude that under the evidence and law set forth above, the jury did not err by finding that Godfrey committed the charged lewd and forcible acts by penetrating Doe's genital opening.

### III. *Section 654 Claim*

At sentencing, the prosecutor argued the count 5 sentence for forcible lewd conduct should be stayed. She pointed out that in her closing arguments to the jury, she had stated that this count involved Godfrey touching Doe's rear, which was part of the same course of conduct as the count 1 sodomy charge: "[E]ssentially, what I told [the jury] is that in count 5, it is the same conduct we are talking about; however, count 5 did not require the penetration, where sodomy requires the penetration. So the jury, obviously, believed there was penetration, and found the defendant guilt[y] of both count[s] 1 and 5. So I would submit to the court that count[s] 1 and 5 are subjected to section 654, so count 5 should be stayed."

The court denied the People's request: "I don't agree with the district attorney's analysis as to the remaining counts being included within the greater offenses because, one, they were separate incidents, they were described separately, both in the information and in the verdict forms."

Section 654, subdivision (a) provides, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions[.]" Section 654 generally precludes punishment for multiple crimes arising from a single course of conduct. (See *People v. Jones* (2012) 54 Cal.4th 350, 358.) It also prohibits multiple punishments for an indivisible course of conduct that violates more than one provision of law. (*People v. Correa* (2012) 54 Cal.4th 331, 336.) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.' " (*People v. Britt* (2004) 32 Cal.4th 944, 951-952, disapproved on another ground in *People v. Correa, supra,* 54 Cal.4th at p. 334.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or

11

facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination." (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)

The record evidence shows that Godfrey's touching of Doe's rear, which supports his count 5 conviction, was incidental to his accomplishing the conduct charged in regard to sodomy in count 1. Accordingly, we conclude the court abused its discretion by not staying the count 5 sentence. (See *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006 ["two counts of forcible lewd conduct were based on the very same acts of digital penetration which formed the basis for the two counts of aggravated sexual assault, which were alleged in [separate] counts"].) We therefore modify the judgment to stay the count 5 sentence.

DISPOSITION

We modify the judgment to stay the count 5 sentence; as so modified, the judgment is affirmed. The court is directed to prepare an amended abstract of judgment consistent with this opinion and forward a certified copy to the Department of Corrections and Rehabilitation.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.

13